MORRISON & FOERSTER LLP
250 W 55th St.
New York, NY 10019
Telephone: 212-468-8000
Facsimile: 212-468-7900
John A. Pintarelli
Erica J. Richards

*Attorneys for Petitioners, Christopher Kennedy and*
*Alexander Lawson, in their capacities as Joint Official*
*Liquidators of IIG Structured Trade Finance Fund*
*Ltd. (in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : Chapter 15 |
| | : |
| | : |
| IIG Structured Trade Finance Fund Ltd.,[1] | : Case No. 20-11129 |
| | : |
| | : |
| Debtor in a Foreign Proceeding. | : |

**DECLARATION OF CHRISTOPHER KENNEDY**
**IN SUPPORT OF CHAPTER 15 PETITION FOR**
**RECOGNITION AS FOREIGN MAIN PROCEEDING**

I, Christopher Kennedy, do hereby declare, under penalty of perjury under the laws of the

United States of America, that the following is true and correct to the best of my knowledge and

belief:

1.      My colleague, Alexander Lawson, and I are the duly appointed joint official

liquidators (the "**Liquidators**" or "**Petitioners**") of IIG Structured Trade Finance Fund Ltd. (in

Official Liquidation) ("**STFF**").

---

[1] The last four digits of the Debtor's company number is (3564).  The registered office of the Debtor is
c/o Alvarez and Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 2nd Floor, 70 Harbour
Drive, George Town, Grand Cayman, KY1-1104, Cayman Islands.

2.     STFF is in liquidation in the Cayman Islands (the "**Cayman Liquidation**")

pursuant to a winding up order dated January 31, 2020 (Cause No. FSD 240 of 2019 (NSJ)) (the

"**Liquidation Order**") made by the Grand Court of the Cayman Islands (the "**Grand Court**").

The Liquidation Order was made pursuant to a petition for the winding up of STFF presented

under Section 94 of the Companies Law of the Cayman Islands (2018 Revision) (the

"**Companies Law**").  A true and correct copy of the Liquidation Order is attached as **Exhibit A**

hereto.

3.     I respectfully submit this declaration (the "**Declaration**") in support of the

Liquidators' petition dated May 8, 2020 (the "**Chapter 15 Petition**") seeking the U.S.

Bankruptcy Court's recognition of (a) the Cayman Liquidation as a "foreign main proceeding"

pursuant to 11 U.S.C. § 1517(b)(1) and (b) the Petitioners as "foreign representatives" of STFF,

pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the

"**Bankruptcy Code**").

4.     I am a qualified insolvency practitioner and a Managing Director of Alvarez &

Marsal Cayman Islands Limited ("**A&M**").  My colleague and fellow Liquidator, Mr. Lawson,

also is a qualified insolvency practitioner at A&M.  We both meet the prescribed requirements

under the Insolvency Practitioners' Regulations 2018 to act as Liquidators.  We both work out of

the offices of A&M, which are located at Flagship Building, 70 Harbour Drive, George Town,

Grand Cayman, KY1-1104, Cayman Islands.

5.     I am duly authorized to make this Declaration on behalf of the Liquidators. I am

fully familiar with the facts of this matter as a consequence of my day to day conduct of the

Cayman Liquidation.  Unless otherwise indicated, all statements contained herein are true to the

best of my knowledge and based upon my personal knowledge of STFF's operations and

2

financial condition, my review of relevant documents and from my conversations with relevant personnel. I am over the age of 18 and, if called to testify, would testify competently about the facts set forth herein.

6.      I am familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL), and approved by a resolution of the United Nations General Assembly on 15 December 1997. I also understand that the Model Law has been adopted in the United States as chapter 15 of the Bankruptcy Code. I have previously been recognized as the foreign representative of Cayman Islands-incorporated funds pursuant to chapter 15 of the Bankruptcy Code, including in *In re Niton Fund SPC*, 15-13252 (SMB) (Bankr. S.D.N.Y.), *In re Madison Niche Assets Fund, Ltd., et. al.*, 16-10043 (KJC) (Bankr. D. Del.), and *In re Platinum Partners Value Arbitrage Fund L.P. (In Provisional Liquidation), et al.*, No. 16-12925 (SCC) (Bankr. S.D.N.Y. Nov. 23, 2016), among others. In particular, the Liquidators are appointed as joint official liquidators in the Cayman Islands official liquidation of IIG Global Trade Finance Fund Ltd. (in Official Liquidation) ("**GTFF**"), an affiliate of STFF, by order of the Grand Court dated 23 October 2019 (in such capacity, the "**GTFF Liquidators**"), which this Court has recognized as a foreign main proceeding (*In re IIG Global Trade Finance Fund. Ltd (in Official Liquidation)*, No. 20-10132 (Bankr. S.D.N.Y Feb. 19, 2020)), and as to which joint administration with the chapter 15 case of STFF is being requested.

7.      I make this Declaration in my statutory capacity as an officer of the Grand Court, and request an extension of comity for the benefit of all of STFF's creditors and sole contributory, whose interests I represent.

ny-1871670

8.      For the reasons discussed below, I submit that:  (a) I am a duly appointed "foreign representative" of STFF in the Cayman Liquidation and that the Cayman Liquidation constitutes a "foreign proceeding" within the meaning of sections 101(23) and (24) of the Bankruptcy Code, respectively; (b) this case was properly commenced in accordance with the requirements of chapter 15 of the Bankruptcy Code; and (c) the Cayman Liquidation satisfies all the requirements to be recognized as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

## I.      GENERAL BACKGROUND

9.      According to the investigations that I have overseen to date, and my review of the documents referenced below, I understand that:  (a) on June 7, 2017, STFF was incorporated as an exempted limited liability company under the laws of the Cayman Islands; (b) STFF was formed and operates pursuant to a Memorandum and Articles of Association, dated June 7, 2017 (the "**Articles**") and filed with the Cayman Islands Registrar of Companies; (c) the directors of STFF were Andrés Carral Cuevas and Martin Laidlaw; (d) Maples Fund Services (Cayman) Limited ("**Maples FS Limited**") was appointed as the administrator of STFF; (e) prior to its entry into official liquidation, STFF's registered address was Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.  Upon its entry into official liquidation its address was changed to c/o Alvarez and Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 2nd Floor, 70 Harbour Drive, George Town, Cayman Islands, KY1-1104; (f) STFF entered into an investment advisory agreement dated June 26, 2017 (the "**Investment Advisory Agreement**") with The International Investment Group L.L.C. ("**IIG**") pursuant to which IIG was appointed as STFF's investment advisor.  IIG is a New Jersey investment advisory company headquartered in New York, New York.  IIG's founders and principals are David Hu and Martin Silver; (g) under the terms of its Confidential Private

4

Offering Memorandum dated June 2017 (the "**Offering Memorandum**"), STFF carried on business as an investment fund, pursuant to which it offered participating shares ("**Shares**") to prospective investors via subscription agreements and its investment objective was to provide consistent returns through a professionally managed portfolio investing primarily in trade finance-related loans and other financing transactions (the "**Investment Facilities**") that predominantly involved obligors based in emerging market countries, with a focus on Latin America, and specifically located in Argentina, Uruguay, Ecuador, Panama, Nicaragua, Guatemala, Colombia, Brazil and Peru; and (h) pursuant to a July 2018 supplement to the Offering Memorandum (the "**July 2018 Supplement**"),[2] STFF identified an additional investment objective, which was to enter into a credit line, term loan or other financing facility or transaction, however structured, with its affiliates and/or affiliates of IIG, provided that such transactions are on an arm's-length basis.

10.    I understand that the book value of the assets of STFF, as of November 30, 2019, were valued at not less than $118,058,047, which amount excludes potential litigation claims, and principally consist of:

| Assets | Value (USD) |
|---|---:|
| Investments/Participations | $89,597,966[3] |
| Vincentin Settlement | $6,639,114[4] |
| Forestal Rio Calle Calle Settlement | $1,526,088 |
| Cash | $6,729,062 |
| Cash held at Bank Leumi | $300,000 |
| Cash held in trust for STFF by TFT at Bank Leumi | $3,162,211 |
| TOF Cayman Loan / TOF Curaçao Guarantee | $10,103,606 |
| **Total:** | $118,058,047 |

---

[2] It does not appear from the books and records of STFF that the July 2018 Supplement was circulated to STFF's shareholders.
[3] Book value.
[4] Estimate based on funds held in escrow.

ny-1871670

11.    According to unaudited information provided to the Liquidators, STFF's liabilities as of November 30, 2019, totaled approximately $32,500 and principally comprised audit expenses.[5]

## II.    EVENTS LEADING UP TO THE CAYMAN LIQUIDATION

### A.    SEC Investigation

12.    According to the investigations that I have overseen to date, in June 2018, STFF's investment advisor, IIG, as well as IIG's two principals, Messrs. Hu and Silver, received subpoenas from the U.S. Securities and Exchange Commission (the "**SEC**").  The subpoenas sought information regarding IIG's policies, fund assets and the valuation of assets in the funds it manages, including STFF (the "**SEC Inquiry**").

13.    In July 2018, STFF's board of directors adopted resolutions approving the July 2018 Supplement, and recording that STFF and its affiliate, GTFF, proposed to make a loan to another affiliate of IIG, TOF Cayman SPV ("**TOF Cayman**"), of up to $16 million (the "**TOF Cayman Loan**").  The TOF Cayman Loan was to be supported by a security agreement between TOF Cayman, as borrower, and GTFF and STFF, as lenders.  In addition, another IIG affiliate, IIG Trade Opportunities Fund N.V. ("**TOF Curaçao**") guaranteed the TOF Cayman Loan.

14.    On November 1, 2018, STFF's directors passed a resolution that purported, *inter alia*, to suspend the redemption of Shares in STFF and the payment of any redemption proceeds pursuant to the Articles, based on a stated determination that it was not possible, given market conditions, to attempt to value assets and thereby enable redemptions, and in view of that, coupled with the SEC Inquiry, it was in the interests of STFF to, *inter alia*, suspend redemptions.

---

[5] The Liquidators are investigating potential additional claims against STFF, which, if proven, could render the fund insolvent.

ny-1871670

15.     On November 14, 2018, GTFF and STFF sent a joint letter to their registered investors (the "**November 14 Letter**") advising, among other things: (a) of the SEC Inquiry; (b) that STFF intended to "wind down" and had engaged a "qualified independent consultant, Scott Steinberg" for that purpose; (c) that STFF did not anticipate net asset value ("**NAV**") calculations for the Shares or completing any audits for the foreseeable future; and (d) that GTFF and STFF had resolved to cease all redemptions effective from September 17, 2018.  A true and correct copy of the November 14 Letter is attached as **Exhibit B** hereto.

16.     I have reviewed the Cayman Petition and the Affidavit of Wonjoo Yoon dated 29 November 2019 (verifying the Cayman Petition) (the "**Affidavit of Wonjoo Yoon**"), a true and correct copy of which is attached as **Exhibit C** hereto, and note that:  (a) in December 2018, STFF's sole contributory was notified that STFF had been placed into wind-down, and that a third party (Mr. Scott Steinberg) had been appointed to oversee such wind-down and orderly realisation of STFF's assets.  This step was taken despite there being no agreement to a soft wind down of STFF by STFF's sole contributory.  Further, the Offering Memorandum did not support the proposition that a soft wind down was in the contemplation of STFF and/or its contributories at the time of subscription for shares in STFF; (b) in or about January 2019, STFF's sole contributory was informed by IIG that US$40 million of STFF's loan portfolio had been written off and US$40 million of STFF's loan portfolio was in default and/or in "work out"; (c) by email dated August 23, 2019, Mr. Steinberg informed STFF's sole contributory that very little of STFF's assets had been liquidated and that he had resigned due to "various managerial and operational issues" and that he had achieved all he could.  Mr. Steinberg later informed STFF's sole contributory that he had not been provided (by IIG) with all of the information necessary to enable the realisation of STFF's assets.

7

### B.    Girobank Litigation

17.    I am aware, having reviewed the documents referred to below, that on April 11,

2019, Girobank, N.V. and Girobank International, N.V. (collectively "**Girobank**") filed a

petition (the "**Girobank Petition**") for an attachment and temporary restraining order against IIG

and two of its affiliates, TOF Curaçao and IIG Capital LLC ("**IIG Capital**") (a specialty finance

company organized under New York law and wholly owned by IIG) in New York Supreme

Court. *See Girobank, N.V. v. IIG Trade Opportunities Fund, N.V., et al.*, Index No. 652135/2019

(N.Y. Sup. Ct. Apr. 11, 2019) (the "**Girobank Litigation**").  A copy of the Girobank Petition is

attached as **Exhibit D** hereto.  The Girobank Petition alleged, among other things, that TOF

Curaçao had gained control of Girobank , a small bank in Curaçao, in 2010 based on fraudulent

representations to Girobank's shareholders and its regulator, the Central Bank of Curaçao and

Saint Maarten (the "**Central Bank**").  The Girobank Petition alleges that Girobank was

subsequently and unwittingly enmeshed in a wide-ranging fraudulent scheme orchestrated by

Messrs. Hu and Silver, among others, designed to cover losses at TOF Curaçao, IIG's "flagship"

fund, and other poorly performing IIG managed investments.

18.    I have reviewed the Cayman Petition and the Affidavit of Wonjoo Yoon and note

that: (a) on September 20, 2019, STFF's sole contributory received notification from Mr. Arthur

Jackoby of Herrick, Feinstein LLP (the "**STFF Appointee**") that he had been appointed to assist

STFF and its directors with, amongst other things, the restructuring of STFF; and (b) in or about

October 2019, the STFF Appointee informed STFF's sole contributory's U.S. counsel of a

number of issues regarding the assets and management of STFF by IIG, including that: (i) a total

sum of US$220 million had been raised from investors in STFF (and GTFF) and US$120 million

of such funds raised was used to pay investors in a defaulted collateralized loan obligation that

was unconnected with either STFF and/or GTFF; and (ii) a number of the loans made by STFF

8

(and GTFF) were in default and had been for at least two years and no material investment payments have been paid on the loans since their acquisition by STFF (or GTFF). I also note from the Cayman Petition and the Affidavit of Wonjoo Yoon, that it may also have been the case that such loans were in default at the time STFF (or GTFF) invested in such loans, suggesting that the loans were not 'new' investments made by STFF (or GTFF) but were instead acquired from an investment fund managed by IIG, and a portion of the proceeds of the repayment of a loan due and payable to STFF (and GTFF) were unaccounted for.

### C.   SEC Litigation

19.     On November 21, 2019, the SEC filed a complaint against IIG (the "**SEC Complaint**"), commencing a case captioned *SEC v. International Investment Group, LLC*, No. 1:19-cv-10796 (S.D.N.Y. Nov. 21, 2019) (the "**SEC Litigation**"). A true and correct copy of the SEC Complaint is attached as **Exhibit G** hereto. The SEC Complaint alleged that IIG has perpetrated a string of frauds intended to cover up tens of millions of dollars in losses and keep its investment advisory business afloat. Among other things, the SEC Complaint alleged that, beginning in or about 2007, IIG engaged in a practice of hiding losses in the portfolio of TOF Curaçao by overvaluing troubled loans and replacing defaulted loans with fake "performing" loan assets. When it was necessary to create liquidity, including to meet redemption requests, IIG would sell the overvalued and/or fictitious loans to new investors, including, ultimately, to GTFF and STFF, and use the proceeds to generate the necessary liquidity required to pay off earlier investors. The SEC Complaint asserted that IIG is liable for violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("**Advisers Act**"); Section 10(b) of the Securities Exchange Act of 1934 ("**Exchange Act**") and Rule 10b-5 thereunder; and Section 17(a) of the Securities Act of 1933 ("**Securities Act**").

ny-1871670

20.     On November 26, 2019, the District Court entered an order with the consent of IIG (the "**SEC Order**"), which provided for, among other relief, (a) an asset freeze, (b) a permanent injunction restraining IIG from engaging in further violations of the Advisors Act, Exchange Act and Securities Act, (c) disgorgement by IIG of its ill-gotten gains, together with prejudgment interest thereon, and (d) payment by IIG of civil monetary penalties.  A true and correct copy of the SEC Order is attached as **Exhibit H** hereto.  Notably, the SEC Order carves out the Liquidators and other liquidators appointed or to be appointed over funds previously managed by IIG (including STFF) from the scope of the asset freeze.  *See* SEC Order at p. 5.

### D.     TOF Curaçao Claim Adjudication

21.     On September 3, 2019, TOF Curaçao was declared bankrupt by the Court of Appeal, Curaçao (the "**Curaçao Bankruptcy**"), and Ms. V.P. Maria LLM (the "**TOF Trustee**") was appointed trustee in that proceeding.

22.     On November 26, 2019, Mr. Lawson and myself, as GTFF Liquidators, and the STFF Appointee jointly sent (a) a notice of nonpayment to TOF Cayman, and (b) a demand for payment to TOF Curaçao, in each case with respect to the TOF Cayman Loan.

23.     Thomas Aardenburg, an attorney with Solina Bonapart & Aardenburg III, is Curaçao counsel for the GTFF Liquidators and STFF Liquidators and is a member of the liquidation committee of TOF Curaçao on their behalf.

24.     On December 27, 2019, Mr. Lawson and I, acting in our capacities as GTFF Liquidators, and the STFF Appointee jointly commenced an action against TOF Curaçao in the New York Supreme Court for the County of New York, Commercial Division, [Index No. 657724/2019] (the "**TOF Curaçao Adjudication Proceeding**"), seeking entry of a judgment pursuant to New York Civil Practice Law and Rules ("**CPLR**") § 3213 enforcing TOF Curaçao's guarantee of the TOF Cayman Loan.  The intent of the TOF Curaçao Adjudication Proceeding

was to obtain an independent, expedited judgement liquidating GTFF and STFF's claims against TOF Curaçao.

### E.    TOF Cayman Petition

25.    On January 6, 2020, Mr. Lawson and I, in our capacity as GTFF Liquidators, caused GTFF to present a petition to the Grand Court seeking the winding up of TOF Cayman in accordance with Section 94 of the Companies Law as a consequence of non-payment by TOF Cayman of sums owed under the TOF Cayman Loan ("**TOF Cayman Petition**").  A true and correct copy of the TOF Cayman Petition is attached as **Exhibit I** hereto.

26.    On April 1, 2020, the Grand Court held the hearing on the TOF Cayman Petition during which Mr Lawson and I were appointed as the Joint Official Liquidators of TOF Cayman. In addition, Geoffrey Eugene Varga and Mark Richard Longbottom of Duff & Phelps (Cayman) Limited, 42 North Church Street, The Harbour Centre, 1st Floor, Grand Cayman, KY1 1100, Cayman Islands, were appointed as "additional liquidators" of TOF Cayman.  Their sole function will be to adjudicate any claim that may be made by GTFF or STFF against TOF Cayman arising out of the loans that were the subject of the TOF Cayman Petition.  A true and correct copy of the winding up order in respect of TOF Cayman made by the Grand Court dated 1 April 2020 (and filed on 17 April 2020) is attached as **Exhibit J** hereto.  Although the TOF Cayman Petition was presented by GTFF (and not STFF), it is described in this affidavit for completeness since STFF also has an interest in the liquidation of TOF Cayman.

### F.    The Cayman Petition

27.    On December 4, 2019, STFF's sole contributory (the "**Petitioning Contributory**") presented a contributory's petition seeking the winding up of STFF on just and equitable grounds and the appointment of the Liquidators as joint official liquidators of STFF pursuant to Section 94 of the Companies Law (the "**Cayman Petition**").  A true and correct copy

of the Cayman Petition is attached hereto as **Exhibit E** hereto. The Cayman Petition alleged that STFF had lost its sub-stratum (*i.e.*, it is no longer pursuing the business for which STFF was formed) because from at least December 2018, STFF had ceased to carry out any investment business in accordance with the fund objectives set out in STFF's Offering Memorandum (as amended by the July 2018 Supplement), and that investment activity may have ceased in April 2018, when the last NAV statements were produced for STFF.

28.      I have reviewed the First Affidavit of Nicole Marie Farrington dated 6 December 2019 which confirms notice of the filing of the Cayman Petition and its request for appointment of the Liquidators was provided by serving a copy of the Cayman Petition on the Company at its registered office in accordance with the Companies Winding Up Rules, 2018 ("**CWR**"). Pursuant to an Order of the Grand Court dated 3 January 2020, a true and correct copy of which is attached as **Exhibit F**, the requirement for advertisement of the Cayman Petition pursuant to the CWR was dispensed with.

29.      The Cayman Petition sought, among other things, the following relief:  (a) the winding up of STFF to commence under the supervision of the Grand Court in accordance with the Companies Law; (b) the appointment of Mr. Lawson and myself as the joint official liquidators of STFF; and (c) the granting of certain powers to the Petitioners in our capacities as the Liquidators of STFF, as described in the Cayman Petition

30.      On 13 January 2020, the hearing of the Cayman Petition took place, during which the assigned Judge noted that, since the activities of parties including IIG and STFF were understood to be the subject to ongoing investigation by the SEC, as a matter of judicial comity the Grand Court preferred to wait until the SEC had provided confirmation of its awareness of the Cayman Petition and non-objection to the relief sought by it.  Such confirmation was

provided by counsel for the Petitioning Contributory on 16 January 2020 and following this, on

31 January 2020, the Grand Court made the Liquidation Order.

31.     Since then, and as discussed in more detail below, Mr. Lawson and I have, among

other things, (a) performed certain statutory duties, including (i) liaising with the sole

contributory of STFF and settling information-sharing and confidentiality protocols with such

contributory so as to enable its participation in the liquidation of STFF;[6] (ii) writing to third

parties requesting the turnover of STFF's assets in their possession, including its books and

records, and (iii) soliciting the filing of proofs of debt and interests to crystallize claims against

the estate; (b) participated in the SEC Litigation (defined below) by filing an objection to a

bank's application for an order lifting the asset freeze to recover funds from account in which

STFF has an ownership interest; and (c) commenced an investigation into the activities of STFF,

including transactions its former investment advisor, IIG, entered into on its behalf, all with the

express purpose of winding down STFF's business from the Cayman Islands.

## III.     EVENTS FOLLOWING COMMENCEMENT OF THE CAYMAN LIQUIDATION

### A.     Liquidators' Investigations

32.     Following the appointment of Mr. Lawson and I as official liquidators for STFF,

one item we immediately began to address was the status of certain affiliates involved in the

scheme.  We are still working to gather data regarding STFF's assets and have spent dozens of

hours working to understand the purported transactions underlying STFF's investments.

Specifically, we have begun an investigation into the assets of STFF.  As part of our

---

[6] This step has been taken because, since that party is the sole contributory, it would not be possible to
constitute a formal liquidation committee in the liquidation proceedings of STFF which would otherwise
provide a forum for such information sharing.

investigation, we have begun efforts to trace STFF's investment proceeds, and to try to recover those proceeds from borrowers and other third parties. It should be noted that the Liquidators have had the benefit of understanding a number of STFF's positions in detail prior to their appointment, due to the correlation of GTFF investments in the same underlying positions.

### B.    TOF Curaçao Chapter 15 Application

33.    On March 2, 2020, the TOF Trustee filed a petition with this Court seeking recognition of the Curaçao Bankruptcy as a foreign main proceeding under chapter 15 of the Bankruptcy Code (the "**IIG TOF Petition**"), Case No. 20-10666 (MEW) (the "**TOF Curaçao Chapter 15 Proceeding**"). In addition, the TOF Trustee filed an application in the TOF Curaçao Chapter 15 Proceeding seeking, among other relief, a stay of the TOF Curaçao Adjudication Proceeding pending a decision with respect to the TOF Curaçao Chapter 15 Petition (the "**Provisional Stay Application**").

34.    On March 6, 2020, this Court granted the Provisional Stay Application and entered an order staying the TOF Curaçao Adjudication Proceeding pending a decision with respect to the TOF Curaçao Chapter 15 Petition (the "**Stay Order**").

35.    On April 3, 2020, the Court entered an order granting the IIG TOF Petition, as a result of which STFF is currently stayed from liquidating its claims against TOF Curaçao in the TOF Curaçao Adjudication Proceeding.

## IV.    QUALIFICATIONS FOR RECOGNITION AND JURISDICTION IN THE UNITED STATES

36.    Mr. Lawson and I have acted as joint liquidators in respect of more than 100 Cayman Islands companies. We have been recognized as foreign representatives pursuant to chapter 15 in the past and are familiar with a significant number of the offshore jurisdiction chapter 15 cases that have been filed in the United States. In view of the foregoing, I submit that

the case for chapter 15 recognition of the Cayman Liquidation of STFF in this instance is strong,

that the need for recognition is urgent, and that any denial of recognition would result in severe

disorder and devaluation of STFF's assets.

37.    Mr. Lawson and I have been directly involved in or have supervised all facets of

the ongoing Cayman Liquidation.  Based upon this experience, I am confident that STFF's

"nerve center" has been established in the Cayman Islands with the Liquidators.  All relevant

parties of which I am aware have looked to the Liquidators, and are participating in the Cayman

Liquidation, for resolution, objection or instruction.  These parties include, but are not limited to,

the United States government, the SEC, former management entities, the directors of STFF,

direct counterparties, and STFF's creditors and sole contributory.  Due to the fact the sole

contributory is based in Seoul, South Korea, neither I nor Mr. Lawson have met with its

representatives in person.  I have, however, on several occasions spoken directly with

representatives of the sole contributory, their Korean counsel and their Cayman Islands counsel.

In addition, I correspond regularly with representatives of the sole contributory via email.

38.    Turning to the statutory requirements and the liquidation committee formation,

the Liquidators have engaged in the following:

(a)    Upon the entry of the Liquidation Order, Mr. Lawson and I took the various steps

required under the Companies Law and the CWR, including the publication of statutory

notices and the convening of a meeting of the sole contributory of STFF.

(b)    A meeting with STFF's sole contributory was held on April 8, 2020.  The meeting

was chaired from the Cayman Islands, and the sole contributory was afforded the

opportunity to participate in the meeting in the Cayman Islands, in person at A&M's

offices in the Cayman Islands, or telephonically.

ny-1871670

(c)    It is not possible for a liquidation committee of STFF to be established because

STFF has only one contributory that the Liquidators are aware of.  However, Mr. Lawson

and I will continue to report to the sole contributory of STFF in accordance with our

obligations under Cayman Islands law and the sole contributory will be invited to provide

its views in respect of any material action we consider taking in respect of STFF.

39.    I have been advised that in order to qualify for recognition under chapter 15, the

Petition must meet certain requirements.  In particular, it must be brought by a "foreign

representative" in respect of a "foreign proceeding" that is pending before a "foreign court," all

as defined in the Bankruptcy Code.

40.    I am aware of the definition of "foreign representative," as referred to in 11

U.S.C. § 101(24), and I believe that the Liquidators qualify as such.  The Liquidators were

appointed by the Grand Court pursuant to the Companies Law to act as the joint Liquidators of

STFF.  Among other things, the Liquidators are charged with administering, protecting and

liquidating the business and assets of STFF and acting on behalf of STFF.  The Liquidators also

are authorized to bring or defend any action or legal proceeding in the name or on behalf of

STFF, or for the benefit of its estate.  As such, the Liquidators are the persons responsible for

representing STFF in the Cayman Liquidation and in all related matters, including this matter,

and are therefore "foreign representatives" of STFF within the meaning of section 101(24) of the

Bankruptcy Code.

41.    I also have been advised that a "foreign court" is defined in section 1502 of the

Bankruptcy Code as "a judicial or other authority competent to control or supervise a foreign

proceeding."  I respectfully submit that the Grand Court qualifies as a foreign court for purposes

of section 1502.

16

42.     I understand that a "foreign proceeding" is defined as "a collective judicial . .

.proceeding in a foreign country . . . under a law relating to insolvency or the adjustment of debt

in which proceeding the assets and affairs of the debtor are subject to control or supervision by a

foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).  I

respectfully submit that the Cayman Liquidation qualifies as such, since by definition it is a

liquidation proceeding pursuant to and governed by the Companies Law under the collective

judicial supervision of the Grand Court for the benefit of all of STFF's creditors, sole

contributory, and parties in interest.

43.     I am also aware that section 1517(b)(1) of the Bankruptcy Code provides that a

foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding

is "pending in the country where the debtor has "the center of its main interests" ("**COMI**").  I

understand that section 1516(c) of the Bankruptcy Code provides that a debtor's 'registered

office" is presumed to be the debtor's COMI in the absence of evidence to the contrary.  STFF

was formed under the laws of the Cayman Islands and maintains its registered office there.  I

believe that there is no basis for rebutting this statutory presumption that is afforded, and that, in

any case, the facts clearly indicate that STFF's COMI is the Cayman Islands.  As demonstrated

by the facts included herein, I further believe that STFF is engaged in nontransient economic

activity in the Cayman Islands.

44.     A considerable amount of STFF's books, records, contracts, operating

agreements, and other critical documentation have been transferred to the Cayman Islands.  No

action in respect of STFF, whether transactional-related or litigation-related, may be taken

without the express approval and consent of myself and Mr. Lawson.

45.     Other than (a) claims to certain cash balances in attorney escrow accounts held in New York or that are held in trust at a New York bank, (b) STFF's books and records held by STFF's former agents, and (c) claims to proceeds payable pursuant to a master participation agreement entered into between STFF and a Delaware trust affiliate, all of STFF's assets are now controlled from the Cayman Islands, including approximately $6.7 million in cash held in a Cayman Islands-domiciled account controlled by the Liquidators.  The vast majority of STFF's assets take the form of illiquid debt owed to STFF by third parties and STFF's participation interests in the Investment Facilities.  All of STFF's such interests are under the sole and exclusive control of the Liquidators in the Cayman Islands.

46.     I have reviewed voluminous documentation issued by and to STFF.  In all such documentation, STFF is referred to and addressed as a Cayman Islands company.  Moreover, all major stakeholders are actively participating in the Cayman Liquidation.  Based upon board meetings and resolutions, and the liquidation of STFF itself, all of which focused on the Cayman Islands, I believe that all relevant creditors and the sole contributory regard STFF to be a Cayman Islands company and the Liquidators to be STFF's current "nerve center."

47.     As Liquidators, we have displaced the prior board of directors of STFF, and STFF is in liquidation before a Cayman Islands court (the Grand Court).  All creditors of STFF may submit their claims in the Cayman Liquidation, and stakeholders have the right to access the Grand Court and appeal decisions of the Liquidators.  Moreover, the liquidation of STFF and its remaining affairs are being conducted from the Cayman Islands.

48.     Substantially all of the work to date relating to the Cayman Liquidation has been conducted in the Cayman Islands and by the A&M staff, and all of the work has been and will continue to be supervised by me and my fellow Liquidator, and, ultimately, subject to the

ny-1871670

supervision of the Grand Court.  In order to properly meet and confer with STFF's stakeholders and counterparties, I have travelled to New York on two occasions for various in-person meetings.

49.    At the outset of the liquidation process, my colleagues in the Cayman Islands and I caused the requisite notices and filings to be filed, published and served, and arranged for the transfer of STFF's books and records to A&M, as STFF's new registered office.

50.    As noted above, the Liquidators likewise have engaged in substantial formal and informal correspondence with STFF'S former principals and all relevant stakeholders, including meetings with creditors and the sole contributory from the Cayman Islands, in an effort to develop a liquidation strategy consensus and handle the liquidation of STFF's assets.

51.    The Liquidators, their staff at A&M, and the United States and Cayman Islands counsel of the Liquidators have worked in the interest of STFF's creditors and sole contributory on an almost non-stop basis since the commencement of the Cayman Liquidation.  I highlight some of the major endeavors undertaken above principally for the purpose of demonstrating the clear establishment of STFF'S "nerve center" in the Cayman Islands.

52.    After the Liquidators were appointed, information requests were made to all third party stakeholders so that all information relating to the STFF's business and assets could be understood.  Since this time, ongoing dialogue with a number of these stakeholders, including IIG and their management, has ensued. A detailed review of the records obtained has been undertaken, particularly in relation to the assets of STFF.  In person meetings and teleconferences have been set up as and when required to obtain further clarity.  The Liquidators are continuing their efforts to gather books, records and information pertaining to STFF.

ny-1871670

53.     In addition to the activities described above, the Liquidators have engaged and

overseen the following specific and general matters on their own and through and with the

assistance of Cayman Islands and United States counsel, which actions commenced within days

of the issuance of the Liquidation Order:

- Overseeing the administration function of STFF;

- Gaining access to and control over certain electronic files of STFF and
undertaking a detailed review of the same;

- Monitoring the SEC Litigation and Girobank Litigation;

- Holding ongoing discussions with all of the major creditors of and equity holders
in STFF;

- Holding meetings and discussions with management and employees of IIG;

- Holding discussions with potential purchasers of the loan positions into which
STFF is invested; and

- Liaising with STFF's former bank to arrange for control and transfer of funds to
the Liquidators.

54.     I believe it is clear that STFF's "nerve center" has been the Cayman Islands since

the commencement of the Cayman Liquidation, and similarly that the Cayman Islands is STFF's

COMI.  I further believe it is clear that since the commencement of the Cayman Liquidation,

STFF has been engaged in non-transitory economic activity in the Cayman Islands.

55.     In accordance with 11 U.S.C. § 1515(c), I am aware of no other pending foreign

insolvency proceedings, except the Cayman Liquidation, in which STFF is the subject of the

proceeding.

56.     In accordance with Rule 1007-1 (a)(4) of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), a schedule of known and pending actions in the United

States in which STFF is named as a party (the "**Litigation**") is attached as **Exhibit K** hereto,

together with the disclosures required under Bankruptcy Rule 7007.1.  The Liquidators are

20

authorized under Cayman Islands law to act on behalf of STFF in defending against or prosecuting the Litigation, as applicable.

57.     For all of these reasons, I respectfully request that this Court enter an Order: (a) recognizing my colleague, Alexander Lawson, and myself as duly authorized foreign representatives of STFF and the Cayman Liquidation as a foreign main proceeding under chapter 15 of the Bankruptcy Code: and (b) granting such other and further relief as this Court may deem just and proper.

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 8, 2020
Grand Cayman, Cayman Islands

/s/ Christopher Kennedy
CHRISTOPHER KENNEDY

*Joint Official Liquidator of IIG Structured Trade Finance Fund Ltd. (in Official Liquidation)*

ny-1871670