**<u>Exhibit C</u>**

서울 영등포구 이의나루로 67
(여의도동. 신송빌딩) 1401호
[별지 제11호서식]

## 서울중앙 공증인 합동사무소

(전화) 02-3178-8200
(팩스) 02-3478-5544

Registered No.    2019 - 2661

# NOTARIAL CERTIFICATE



NOTARY PUBLIC OFFICE
SEOUL-JOONGANG

floor 14 Sinsong Bldg
67, yeouinaru-ro, yeongdeungpo-gu, Seoul, Korea

210mm X 297mm



Affidavit of W. Yoon
Sworn 29/11/2019
Petitioners
Exhibits: WY-3 & WY-4
Filed   /12/19

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**



**CAUSE NO FSD**    *240*    **OF 2019 (   )**

**IN THE MATTER OF THE COMPANIES LAW (2018 REVISION)**

**AND IN THE MATTER OF IIG STRUCTURED TRADE FINANCE FUND LTD**

––––––––––––––––––––––––––––

### AFFIDAVIT OF WONJOO YOON

––––––––––––––––––––––––––––

I, WONJOO YOON of business address 46F, Three IFC, 10 Gukjegeumyung-ro, Yeougdeugpo-gu, Seoul, 07326, Republic of Korea, MAKE OATH and say as follows:

1.     I am a director of LAM Global Management Ltd, l the General Partner of LAM Enhanced Trade Finance Fund I L.P, (together the **"Petitioners"**). I am duly authorised to make this affidavit on the Petitioners' behalf.

2.     I make this affidavit to verify the contents of, and to support the winding up petition which is to be presented by the Petitioners seeking the winding up of IIG Structured Trade Finance Fund Ltd (the **"Company"** or **"STFF"**) and the appointment of Christopher Kennedy and Alexander Lawson of Alvarez & Marsal Cayman Islands Limited as joint official liquidators of the Company.

3.     The facts and matters set out in this affidavit are within my own knowledge unless otherwise stated and are true. Where I refer to information provided to me by others, the source of my information is stated and the facts and matters stated are true to the best of my knowledge, information and belief.

4.    There is now produced and shown to me marked "**WY-3**", a true copy of the winding up petition intended to be presented to the Court (the "**Petition**"). I confirm that the facts set out in the winding up petition are true to the best of my knowledge, information and belief.

5.    There is now produced and shown to me marked "**WY-4**", a paginated bundle of copy documents to which I refer in this affidavit. All references to page numbers in this affidavit are references to the page numbers of "**WY-4**" unless otherwise stated.

6.    Unless otherwise stated I adopt the same definitions used in the Petition for ease of reference.

**Cessation of the Company's Business and Loss of Substratum**

7.    I rely on and repeat the facts and matters set out in my affidavit sworn on 25 October 2019 ("**First Affidavit**") and filed in the winding up proceedings against the Company with cause number FSD 216 of 2019 (NAS) ("**FSD 216 of 2019**"), in support of the Petition.

8.    I have also read the affidavit of Arthur G. Jakoby sworn 22 October 2019 and filed in FSD 216 of 2019, (the "**Jakoby Affidavit**"), which I also rely on in support of the Petition. Mr. Jakoby states at paragraph 1 of the Jakoby Affidavit that on or about 9 September 2019 he was appointed by the directors of the Company to assist with the liquidation of its assets. Mr Jakoby sets out details of concerns he has about the conduct of the management of the Company from whom he says he would require substantial cooperation to deal with the liquidation of the Company, which may not be forthcoming. Mr. Jakoby therefore supports the appointment of independent liquidators in respect of the Company, (paragraph 17 of the Jakoby Affidavit).

9.    In summary and as set out in my First Affidavit the Company has ceased carrying on any investment business as described in its Offering Memorandum (paragraph 7 of my First Affidavit) effective from November 2018 because:

THIS AFFIDAVIT was filed by Kobre & Kim (Cayman) of physical address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman, Cayman Islands KY1-9006 and mailing address: 10 Market Street, PO Box 410, Camana Bay, Grand Cayman, Cayman Islands, KY1-9006, Attorneys-at-Law for the Petitioners whose address for service is that of their said attorneys

a. On 14 November 2018 Shinhan received a letter from the Company addressed jointly to the Company and GTFF confirming that Scott Steinberg had been appointed to wind down both entities in the light of the SEC investigation into IIG and its owner Mr. Hu and Mr. Silver, that no further NAVs would be distributed and the directors of both companies had resolved to suspend redemptions (paragraph 22 of my First Affidavit);

b. In or about December 2018, Mr Steinberg advised Shinhan he had been appointed by the directors of the Company to wind down the Company and realize its assets but on 23 August 2019 he confirmed to Shinhan very little of the company's assets had been liquidated and he had resigned due to "*various managerial and operational issues*" (paragraph 27 of my First Affidavit)*;*

c. Neither the Articles of Association nor the Offering Memorandum contemplate a soft wind down of the Company's assets and consent to the soft wind down of its assets by Mr Steinberg was not sought from Shinhan;

d. On 20 September 2019 the Petitioners received notification that Mr Jakoby had been appointed by the directors of the Company to assist with the liquidation of its assets but were subsequently advised by Mr Jakoby he was unable to take control of the assets and proceed to liquidate them in the light of the winding up petition presented against GTFF on 22 August 2019;

e. As stated at paragraph 8 above Mr Jakoby has advised that due to concerns about the ability to obtain the cooperation from IIG and Mr. Hu and Mr. Silver required to realize the Company's assets, independent liquidators should be appointed;

f. The Petitioner is not aware of any change in Mr. Jakoby's position since the Jakoby Affidavit; and

g. The wind down and liquidation of the assets of the Company has not progressed despite having been instigated in December 2018.

THIS AFFIDAVIT was filed by Kobre & Kim (Cayman) of physical address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman, Cayman Islands KY1-9006 and mailing address: 10 Market Street, PO Box 410, Camana Bay, Grand Cayman, Cayman Islands, KY1-9006, Attorneys-at-Law for the Petitioners whose address for service is that of their said attorneys

10.    The directors of the Company, IIG and Mr. Hu and Mr. Silver were all sent copies of the
       winding up proceedings filed against the Company with cause number FSD 216 of 2019
       (NAS) and advised that there would be a directions hearing in FSD 216 OF 2019 on 8
       November 2019 and the winding up petition in FSD 216 OF 2019 would be heard on 22
       November 2019. They all confirmed that they did not intend to oppose the winding up of
       the Company and liquidators being appointed by the Cayman Island Court, (pages 2 to
       8).

11.    On 25 November 2019, the Petitioners lawyers served a copy of the Order dated 8
       November 2019 on the Company and provided a copy of the Order to the directors of the
       Company, IIG, Mr. Silver and Mr. Hu, (pages 9 to 19). Seth Taube of Baker Botts, who
       acts for Mr. Silver responded to suggest the Petitioners lawyers send the order to the
       Company's directors and both of the Company's directors acknowledged receipt of the
       email sent to them enclosing a copy of the Order dated 8 November 2019, (pages 20 to
       24).

12.    I understand from court filings made by the SEC in the United States District Court of the
       Southern District of New York in case number 1:19-cv-10796-DLC ("**SEC Proceedings**")
       that on 14 November 2019, on behalf of IIG, Mr. Silver and Mr. Hu waived service of a
       summons and the complaint and consented to judgment and a preliminary asset freeze
       being entered against IIG, (pages 39 to 50). On 26 November 2019 the judge in the SEC
       Proceedings approved the consent of IIG and entered judgment against IIG on the terms
       consented to by IIG, (pages 51 to 57). The asset freeze expressly excludes any assets of
       any funds managed by IIG over which a liquidator is appointed. In the circumstances I
       understand that once the proposed liquidators are appointed over the Company its assets
       will not be caught by the asset freeze, instead the proposed liquidators will be able to
       secure such assets and realize them for the benefit of the Petitioners.

**Conclusion**

13.    In all the circumstances the Petitioners, being the sole investors of STFF, ask this
       Honourable Court to make an order winding up STFF and appointing Christopher Kennedy
       and Alexander Lawson of Alvarez & Marsal Cayman Islands Limited, as liquidators of

THIS AFFIDAVIT was filed by Kobre & Kim (Cayman) of physical address: 9 Forum Lane, Suite
3207, Camana Bay, Grand Cayman, Cayman Islands KY1-9006 and mailing address: 10 Market
Street, PO Box 410, Camana Bay, Grand Cayman, Cayman Islands, KY1-9006, Attorneys-at-Law
for the Petitioners whose address for service is that of their said attorneys

STFF so that they may take control of STFF's assets and wind STFF up in an orderly and proper manner as well as investigate the matters uncovered by Mr. Jakoby.

14.    Mr Kennedy and Mr. Lawson are the same individuals who were appointed liquidators of GTFF on 23 October 2019. The Petitioners believe that as GTFF and STFF have funded many of the loans jointly and so they are held jointly by the two funds, it makes commercial and practical sense for Mr. Lawson and Mr. Kennedy to be appointed liquidators of STFF too. The Petitioners are not aware of any conflict of interest that would make it impractical for Mr. Lawson and Mr. Kennedy to be appointed liquidators of STFF as well as GTFF.

Sworn at                                    )
this 29 day of November 2019               )
                                           )
                                           )                    _____
                                           )                         Wonjoo Yoon
Before me:                                 )
S.K. CHUNG
Notary Public

THIS AFFIDAVIT was filed by Kobre & Kim (Cayman) of physical address: 9 Forum Lane, Suite 3207, Camana Bay, Grand Cayman, Cayman Islands KY1-9006 and mailing address: 10 Market Street, PO Box 410, Camana Bay, Grand Cayman, Cayman Islands, KY1-9006, Attorneys-at-Law for the Petitioners whose address for service is that of their said attorneys

Affidavit of W. Yoon
Sworn 29/11/2019
Petitioners
Filed   /12/19

**IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION**

CAUSE NO FSD       OF 2019 (NAS)

**IN THE MATTER OF THE COMPANIES LAW (2018 REVISION)**

**AND IN THE MATTER OF IIG STRUCTURED TRADE FINANCE FUND LTD**

---

**EXHIBIT WY-3**

---

This is the Exhibit marked **"WY-3"** referred to in the Affidavit of Wonjoo Yoon sworn before me this 29 day of November 2019.

|   |   |
|---|---|
| Before me: | ) |
|   | ) |
|   | ) _____ |
| S. K. CHUNG | ) Wonjoo Yoon |
| Notary Public | ) |

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO FSD     OF 2019 (NAS)**

**IN THE MATTER OF THE COMPANIES LAW (2018 REVISION)**

**AND IN THE MATTER OF IIG STRUCTURED TRADE FINANCE FUND LTD**

---

**WINDING UP PETITION**

---

**To the Grand Court**

The humble petition of LAM Global Management Ltd I, as General Partner for LAM Enhanced Trade Finance Fund I L.P. both of c/o Walkers Corporate Limited, Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands, (together, the **"Petitioners"**) shows that:

**A.    Introduction**

1.    The Petitioners present this petition for the winding up of IIG Structured Trade Finance Fund Ltd (**"STFF"** or **"Company"**). LAM Enhanced Trade Finance Fund I L.P. (**"LAM"**) is a shareholder in the Company holding 119,462.406 participating non-voting shares (the **"Participating Shares"**) representing 100% of the Participating Shares issued by the Company.

2.    The Petitioners seek the winding up of the Company pursuant to Section 92(e) of the Companies Law (2018 Revision) ("**Companies Law**") on the grounds that it is just and equitable to do so because there has been a failure and/or loss of the substratum of the Company.

3.    The Company was incorporated in the Cayman Islands on 7 June 2017 as an exempted limited company, with company registration number 323564 pursuant to the Companies

Law (as amended). The registered office of the Company is at Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.

4.    The authorised share capital of the Company is US$50,000 divided into 1,000 Management Shares (which are non-participating shares) of US$1.00 par value each and 4,900,000 Participating Shares of US$0.01 par value each.

5.    The Company was incorporated as an open-ended investment fund. The Offering Memorandum of the Company dated June 2017 (the **"Offering Memorandum"**) states that the investment objective of the Company is to *"provide consistent returns through a professionally managed portfolio investing in financial instruments issued in connection with or enterprises engaged in, global trade finance transactions."* The Company's stated objective was to invest primarily in trade or trade-related revolving credit lines, term loans or other facilities of transactions, however structured, predominantly in emerging markets in particular Latin America.  As far as the Petitioners were aware over 93% of the loans were made to businesses located in Argentina, Peru, Columbia, Ecuador, Uruguay and Panama.

**B.    Management Structure**

6.    The Petitioners understand that the Directors of the Company are Andrés Carral who is stated in the Offering Memorandum to be Senior Managing Partner of  Carral Y Asociados in Mexico and Martin Laidlaw of Premier Fiduciary Services (Cayman) Limited of Ground Floor Winward 1, Regatta Office Park, George Town, Grand Cayman, KY1-1201, Cayman Islands, who provide their services as non-executive directors responsible for the overall investment policies of the Company with the day to day management and administration of the Company being delegated by them to the investment advisor and administrator to the Company. At no time did the Petitioners have any direct contact with the Directors, other than through correspondence which they sent to the shareholder of the Company on its behalf.

7.    The Offering Memorandum states that the investment advisor is The International Investment Group L.L.C. (**"IIG"**). IIG is responsible for the management of the Company's

investments pursuant to an Investment Advisory Agreement entered into between the Company and IIG. IIG is stated to be an investment firm organized under the laws of New Jersey in the U.S.A. Its founders and owners are stated to be David Hu and Martin S. Silver. At all material times the Petitioners dealt with Mr Hu and/or Mr. Silver and/or IIG's employees.

8.    The Offering Memorandum states that Maples Fund Services (Cayman) Limited, a licensed mutual fund administrator headquartered in the Cayman Islands is the Company's administrator (the **"Administrator"**).

9.    The Offering Memorandum also states that MaplesFS Limited, a trust company registered with the Cayman Islands Monetary Authority, holds the sole issued Management Share, which is the only voting and non-participating share of the Company, as **"Share Trustee"**.

**C.    Background to the Petitioner's Investment in the STFF**

10.    LAM is a Cayman Islands exempted limited partnership formed under the Exempted Limited Partnerships Law on 27 March 2019 with registration number WC-10094. Its general partner is LAM Global Management Ltd I a Cayman Island exempted limited company incorporated under the Companies Law on 21 March 2019 with registration number 349214.

11.    Shinhan Investment Corp (**"Shinhan"**) is a company incorporated in Seoul, South Korea on 2 April 1973 under business registration number 116-81-36684, which operates as a securities brokerage and investment banking company and is the primary brokerage service provider for Lime Asset Management. Its registered office is at 70 Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea, 07325.  In or about May and June 2017 Shinan subscribed for participating shares in IIG Global Trade Finance Fund Ltd (**"GTFF"**) with a value of US$70,000,000, an affiliated fund to STFF, which has common directors, a common administrator and investment advisor to STFF. Shinhan held such shares as nominee on behalf of Lime Asset Management.

12.    In or about May 2017, IIG informed Shinhan that they could establish a new fund for Shinhan, which would have similar investments to GTFF with the same credit valuation process but the investments would have a slightly longer duration, resulting in a return that was approximately 60 basis points higher than the return provided by GTFF.

13.    Pursuant to a Subscription Agreement dated 20 June 2017 Shinhan subscribed for Participating Shares in STFF with a value of US$63,000,000 on behalf of Lime Asset Management.

14.    Pursuant to a Subscription Agreement dated 19 July 2017 Shinhan subscribed for additional Participating Shares in STFF with a value of US$37,000,000 on behalf of Lime Asset Management.

15.    Pursuant to a Subscription Agreement dated 18 September 2017 Shinhan subscribed for additional Participating Shares in STFF with a value of $20,000,000 on behalf of Lime Asset Management.

16.    As a result of the share subscriptions set out at paragraphs 12 to 14 above inclusive, Shinhan became the holder of 119,462.406 Participating Shares in the Company, which it held as nominee for Lime Asset Management.

17.    In or about January 2019 Lime Asset Management discovered that the assets of STFF (and GTFF) were seriously impaired and so agreed with Triterras Asia Pte. Ltd ("**Triterras**"), a company incorporated in Singapore and experienced in managing distressed loans held by trade finance funds, that they would sell the Participating Shares held by Shinhan in STFF (and GTFF) to Triterras. Since Shinhan is only licensed to sell investments to the domestic market in Korea, the Participating Shares held by Shinhan had to be transferred to another entity to facilitate the transfer to Triterras.

18.    In or about May 2019 Shinhan transferred all of the shares held in STFF to LAM, the consideration for which was that Shinhan became a limited partner of LAM.

19.   On 1 June 2019 the Administrator of STFF sent a transfer confirmation to LAM to confirm the transfer of 119,462.406 Participating Shares from Shinhan to LAM had been registered by STFF.

20.   Due to a winding up petition which was presented by Non-UCITS Aktia Trade Finance (**"Aktia"**) against GTFF in this Court under cause number FSD No: 160 of 2019 (RPJ) on 22 August 2019 (the **"GTFF Winding Up Petition"**) the transfer of the Participating Shares held by the Petitioners in STFF (and GTFF) to Triterras has not been completed to Triterras.

21.   The last net asset value (**"NAV"**) statements that the Petitioners have for their shareholding in STFF are for the period 1 April to 30 April 2018. Neither Shinhan nor the Petitioners have received any NAV statements since April 2018. Shinhan and the Petitioners have contacted the Administrator on numerous occasions to request copies of the NAV statements for the period since April 2018. The Administrator has advised Shinhan and the Petitioners that they are unable to produce any further NAV statements due to IIG's failure to provide the Administrator with the NAV calculations necessary to enable the Administrator to prepare the outstanding NAV statements.

**D.    Loss of Substratum.**

22.   On 14 November 2018 Shinhan received a letter addressed jointly to the registered shareholders of STFF and GTFF ("**November Letter**"), which stated that:

   a) In June 2018 IIG and its owners Mr. Silver and Mr. Hu had received subpoenas from the U.S. Securities and Exchange Commission ("**SEC"**) seeking documents and information about IIG's policies, fund assets and other documents relating primarily to the valuation of assets in the portfolios of the funds it manages;

   b) Given the market conditions in South America and the SEC inquiry, IIG have advised STFF's and GTFF's directors that IIG intends to wind down both funds and that they have engaged an independent qualified consultant, Scott Steinberg, who has represented distressed businesses for 35 years to assist with winding down the funds;

   c) Various factors have resulted in or will be likely to result in significant impairment to the value of both funds' assets;

d) They do not anticipate distributing NAVs or completing any audits currently underway in the foreseeable future; and

e) The directors of STFF and GTFF have resolved to suspend all redemptions.

The letter is copied to the directors and Mr. Silver and Mr. Hu.

23.    Copies of the resolutions were not attached to the November Letter and prior to receiving that letter Shinhan did not receive any notification that a resolution suspending the redemptions of STFF had been passed.

24.    The Petitioners understand that the SEC investigation into the conduct of IIG is ongoing.

25.    In or about December 2018 Shinhan was advised by Mr Steinberg that he had been appointed by the Directors as an internal advisor in respect of the wind down of STFF and that his role was to ensure STFF's assets were realized as efficiently as possible and not on a fire sale basis. No agreement to a soft wind down of STFF was sought from Shinhan by the Directors or IIG. Further the Offering Memorandum does not support the proposition that a soft wind down was in the contemplation of STFF or its investors when they subscribed for shares in STFF.

26.    In or about January 2019 Shinhan was informed by IIG that $40M of STFF's loan portfolio had been written off and $40M of STFF's loan portfolio was in default and/or in "work out". Since the meeting in January 2019 neither Shinhan nor the Petitioners have received any communication from IIG or Mr. Hu or Mr. Silver.

27.    By an email dated 23 August 2019 Mr. Steinberg advised the Petitioners that very little of the assets had been liquidated and that he had resigned due to "*various managerial and operational issues*" and that he had accomplished all he could. Mr Steinberg subsequently informed the Petitioners that he had not been provided with all of the information by IIG to enable him to realize STFF's assets.

28.   By an email dated 26 August 2019 Mr. Steinberg advised the Petitioners that the GTFF
      Winding Up Petition had been presented by Atkia and provided the Petitioner with a copy
      of the GTFF Winding Up Petition.

29.   On 20 September 2019 the Petitioners received notification from Arthur Jakoby, a partner
      in the New York law firm of Herrick, Feinstein LLP, advising that he had been retained by
      STFF's and GTFF's directors to assist with the liquidation of the funds' assets.

30.   The Petitioners were advised that as a result of the winding up petition presented by Aktia,
      Mr. Jakoby informed the Directors of GTFF and STFF that he was unable to take control
      of the assets of both GTFF and STFF to proceed to liquidate those assets until the
      outcome of the winding up petition was determined.

31.   On 23 October 2019 a winding up order was made by the Cayman Islands Court in respect
      of GTFF and Mr. Christopher Kennedy and Mr. Alexander Lawson of Alvarez & Marsal
      Cayman Islands Limited were appointed Joint Official Liquidators of GTFF.

32.   The Petitioners have been advised by Mr. Jakoby that due to concerns about the ability to
      obtain the necessary cooperation from Mr. Hu and Mr. Silver required to realize the assets
      of STFF, Mr. Jakoby believes that independent liquidators should be appointed in order to
      realize STFF's assets.

   E.   **Concerns about STFF's Management and Assets**

33.   In or about October 2019 Mr. Jakoby advised the Petitioners' U.S. lawyers Milbank of the
      following issues regarding the assets and management of STFF by IIG, which cause the
      Petitioners serious concern:

      a)   A total sum of $220 million was raised from investors in STFF and GTFF, $120 million
           of which was invested by the Petitioner in STFF and $70 million was invested by the
           Petitioner in GTFF. The Petitioners understand that Mr. Jakoby has discovered that
           $170 million of the said sum of $220 million was used to pay off old investors
           unconnected with GTFF and STFF in a defaulted collateralized loan obligation.

b)  Many of the loans made by STFF and GTFF have been in default for at least 2 years and may have been in default when STFF and GTFF acquired the loans suggesting that they were not new investments made by STFF and GTFF but acquired from another fund managed by IIG. Further no material interest payments appear to have been made on the loans since their acquisition.

c)  Mr. Hu's lawyers advised Mr. Jakoby that a loan of US$ 74M which was made to an Argentinian company called "Vinsentin", was settled for US $34 million. The net sum of $22 million from that settlement is being held in an escrow account with a New York law firm called Caffetz Lindsey.  Apparently, the sum of US$5 million was paid in legal fees and the sum of $2.6 million was paid to "brokers" out of the settlement of US$34 million paid by Vinsentin, leaving US $4.4 million of the total sum of U$ $34 million unaccounted for.

## F.    Conclusion

34.  In the circumstances it is apparent that the Company's substratum has failed because:

a)  On its own admission since December 2018 the Company ceased to carry out any investment business as set out in the Offering Memorandum, or at all, and has most likely not been carrying out any investment business since April 2018 when the last NAV statements were produced; and

b)  The wind down and liquidation of the Company's assets has not progressed despite being initially instigated by the Directors of the Company in December 2018 and is not capable of being achieved absent the appointment of independent liquidator to wind up the Company in accordance with the views of the Petitioners as the sole investors in the Company and not the Directors and/or IIG.

35.  In all the circumstances the Petitioners, being the sole investor in the Company and not having consented to a soft wind down under the control of the Directors of the Company, seek the appointment of independent liquidators to the Company in order that the

Company can be wound up in an orderly and proper manner and the serious concerns that have been uncovered about the management of the Company set out at paragraph 33 above can be properly investigated.

**G.    Relief  Sought**

36.    In the premises it is just and equitable in all the circumstances that the Company should be wound up pursuant to section 92(e) of the Companies Law.

37.    The Petitioner nominates Mr. Christopher Kennedy and Mr. Alexander Lawson of Alvarez & Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 70 Harbour Drive, George Town, Grand Cayman, KY1-1104 Cayman Islands for the appointment as the joint official liquidators of the Company.

**YOUR PETITIONERS THEREFORE HUMBLY PRAYS THAT:-**

(1)    The Company be wound up in accordance with the Companies Law.

(2)    Christopher Kennedy and Alexander Lawson of Alvarez & Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 70 Harbour Drive, George Town, Grand Cayman, KY1-1104 Cayman Islands be appointed joint official liquidators ("**JOLs**").

(3)    The JOLs shall not be required to give security for their appointment.

(4)    The JOLs have the power to act jointly and severally in their capacity as liquidators of the the Company.

(5)    The JOLs be authorised to take any such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in any other relevant jurisdiction and to make such application to the courts of such jurisdiction for that purposes.

(6)    In addition to the powers set out in Part II of the Third Schedule to the Companies Law the JOLs be authorised to exercise all of the powers set out in paragraphs 1, 2, 4, 7, 10,

and 11 of Part 1 of the Third Schedule to the Companies Law and section 110(2) thereof, without further sanction or intervention of this Honourable Court.

(7)    The JOLs be authorised to do any act or thing considered by them to be necessary or desirable in connection with the liquidation of the Company and the winding up of its affairs in the Cayman Islands and/or elsewhere.

(8)    The JOLs be at liberty to appoint such counsel, attorneys, professional advisors, whether in the Cayman Islands or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with Order 25 of the Companies Winding Up Rules 2018.

(9)    No disposition of the property of the Company by or with the authority of the JOLs in carrying out their duties and functions and the exercise of their power under any Order granted pursuant to this Petition shall be voided by virtue of section 99 of the Companies Law.

(10)    Subject to section 109(2) of the Companies Law and the Insolvency Practitioner's Regulations 2018, the JOLs be authorised to render and pay invoices out of the assets of the Company for their own remuneration.

(11)    The JOLs be at liberty to meet all disbursements reasonably incurred in connection with the performance of their duties and, for the avoidance of doubt, all such payments shall be made as and when they fall due out of the assets of the Company as an expense of the liquidation.

(12)    The JOLs be at liberty to apply generally.

(13)    The Petitioners' costs of and incidental to the Petition be paid forthwith out of the assets of the Company on the standard basis.

(14)    Such further or other relief be granted as the Court deems appropriate.

**AND** your Petitioner will ever pray etc.

Dated the                    day of December 2019

_____

**KOBRE & KIM (CAYMAN)**
Attorneys at Law for the Petitioners

**NOTE**: This petition is intended to be served on the Company at its Registered Office.

**NOTICE OF HEARING**

**TAKE NOTICE THAT** the hearing of this petition will take place at the Law Courts, George Town, Grand Cayman, on          January 2020 at          am/pm.

Any correspondence or communication with the Court relating to the hearing of this petition should be addressed to the Registrar of the Financial Services Division of the Grand Court at PO Box 495, Grand Cayman, KY1-1106, telephone 345 949 4296.

**Affidavit of W. Yoon**
**Sworn 24/11/2019**
**Petitioners**
**Filed    /12/19**

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO FSD     OF 2019 (NAS)**

**IN THE MATTER OF THE COMPANIES LAW (2018 REVISION)**

**AND IN THE MATTER OF IIG STRUCTURED TRADE FINANCE FUND LTD**

---

**EXHIBIT WY-4**

---

This is the Exhibit marked **"WY-4"** referred to in the Affidavit of Wonjoo Yoon sworn before me this 29 day of November 2019.

Before me: )
)
) _____
) Wonjoo Yoon
)

S.K. CHUNG
Notary Public

**Rebecca Hume**

| | |
|---|---|
| **From:** | Andres Carral Cuevas <andres@carral.org> |
| **Sent:** | Monday, November 04, 2019 7:52 PM |
| **To:** | Rebecca Hume |
| **Cc:** | Martin Laidlaw; Arthur G. Jakoby |
| **Subject:** | [EXTERNAL] Re: STFF |

Dear Ms. Hume,

As an independent director of IIG Structured Trade Finance Fund Ltd, I am in receipt of the Winding Up Petition, and I do not intend to object to the Petition or to formally appear at the Petition Hearing.

Kind Regards


## Andrés Carral
## Carral y Ass.
## Cel.: +52 1(55) 3233 1185
## Off. : +52 (55) 5442 2572



On 4 Nov 2019, at 17:30, Rebecca Hume <Rebecca.Hume@kobrekim.com> wrote:

Dear Mr. Laidlaw,

Thank you for the confirmation.

Kind regards,

Rebecca


Rebecca Hume
+1 345 749 4016

<KobreKim-EmailSignature_1f6e08c5-d881-4dd6-91d2-11f7da1a2a63.jpg>

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)


This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or

1

WY-4/ 2

co and information. If the addressee of this e-mail message is not the recipient, or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

**From:** Martin Laidlaw [mailto:martin@pfscayman.com]
**Sent:** Monday, November 04, 2019 5:21 PM
**To:** Rebecca Hume <rebecca.hume@kobrekim.ky>
**Cc:** Andres Carral Cuevas (andres@carral.org) <andres@carral.org>; 'Jakoby, Arthur (ajakoby@herrick.com)' <ajakoby@herrick.com>
**Subject:** [EXTERNAL] STFF

Dear Ms. Hume,

As an independent director of IIG Structured Trade Finance Fund Ltd, I am in receipt of the Winding Up Petition, and I do not intend to object to the Petition or to formally appear at the Petition Hearing.

Kind Regards

Martin

Martin Laidlaw
Director

<image001.png>

Ground Floor, Windward 1
Regatta Office Park
West Bay Road
P.O.Box 30100  KY1-1201
Grand Cayman, Cayman Islands

Email: martin@pfscayman.com

Phone 1 345 945 8881
Mobile 1 345 916 4412

This email may contain confidential and /or privileged information. If you are not the intended recipient (or have received this email by mistake), please notify the sender immediately and destroy this email in its entirety without reading it or making a copy. Any unauthorised copying, disclosure or distribution of the material in this email is strictly prohibited.

Email transmission security and error-free status cannot be guaranteed as information could be intercepted, corrupted, destroyed, delayed, incomplete, or contain viruses. Additionally, information in this email is given in good faith and may include pricing information dependent on third parties. The sender therefore does not accept any liability for any errors or omissions in the content of this message

WY-4/ 3

| | |
|---|---|
| **From:** | Nicole Farrington |
| **To:** | 04640.001 (LAM Global and Lime Asset Management Advice) |
| **Subject:** | FW: In the matter of IIG Structured Trade Finance Fund Limited FSD 216 of 2019 |
| **Date:** | Thursday, November 07, 2019 10:40:29 AM |

Nicole Farrington

Litigation Assistant

+1 345 749 4034

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

**From:** Martin Laidlaw [mailto:martin@pfscayman.com]
**Sent:** Thursday, November 07, 2019 9:44 AM
**To:** Nicole Farrington <Nicole.Farrington@kobrekim.com>
**Cc:** Rebecca Hume <rebecca.hume@kobrekim.ky>; Pamella Mitchell
<pamella.mitchell@kobrekim.ky>
**Subject:** [EXTERNAL] RE: In the matter of IIG Structured Trade Finance Fund Limited FSD 216 of 2019

Dear Nicole

I confirm receipt of your email below and the two documents via Mimecast.

It is not my intention, at this time, as a director to attend either hearing.

Kind Regards

Martin

Martin Laidlaw

Director

Email martin@pfscayman.com

Phone 1 345 945 8881

Mobile 1 345 916 4412

**From:** Nicole Farrington [mailto:Nicole.Farrington@kobrekim.com]
**Sent:** Wednesday, November 06, 2019 5:07 PM

**To:** Martin Laidlaw
**Cc:** Rebecca Hume; Pamella Mitchell
**Subject:** In the matter of IIG Structured Trade Finance Fund Limited FSD 216 of 2019

I'm using Mimecast to share large files with you. Please see the attached instructions.

Dear Mr. Laidlaw,

We write further to our email dated 30 October 2019 by which we provided you with a copy of the winding up petition presented against IIG Structured Trade Fund Ltd (the "Company") on 30 October 2019, together with the affidavit evidence in support. We enclose a copy of the sealed affidavit of Oliver St. Thomas sworn on 4 November 2019 with exhibit marked "OS1", which deals with service of the petition and supporting evidence as well as the current position regarding attendance at the hearing of the winding up petition on 22 November, for your information.

We would be grateful if you could acknowledge safe receipt and confirm whether or not you and/or IIG  intends to attend the hearing this Friday 8 November at 9:30 a.m. and/or the hearing of the winding up petition on 22 November at 10:00 a.m. and, if so, whether you and/or IIG intend to oppose the making of a winding up order against the Company.
-
Regards,

## Oliver Smith

| | |
|---|---|
| **From:** | Mitchell, Jason <Jason.Mitchell@srz.com> |
| **Sent:** | Thursday, November 07, 2019 11:29 AM |
| **To:** | Nicole Farrington |
| **Cc:** | Pamella Mitchell; Rebecca Hume; Schiffman, Howard; DHu@iigh.com; ajakoby@herrick.com; Oliver Smith |
| **Subject:** | [EXTERNAL] RE: In the matter of IIG Structured Trade Finance Fund Limited FSD 216 of 2019 |

Ms. Farrington,

I write on behalf of David Hu in response to your email below.  We have received the copy of the winding up petition and the sealed affidavit of Oliver St. Thomas.  Mr. Hu does not intend to attend the hearing this Friday, November 8 nor the hearing on November 22, nor does he intend to oppose the winding up petition.

We would ask that you please re-send to us the files that Oliver Smith sent via Mimecast on October 31 to Mr. Hu and Mr. Schiffman.  We have attempted to download them using the Mimecast link provided, but it appears that the access key has expired.

Thank you.

**Jason T. Mitchell**
Special Counsel
202.729.7467

Schulte Roth & Zabel LLP
www.srz.com

---

**From:** Nicole.Farrington@kobrekim.com <Nicole.Farrington@kobrekim.com>
**Sent:** Wednesday, November 6, 2019 5:00 PM
**To:** DHu@iigh.com
**Cc:** Schiffman, Howard <Howard.Schiffman@srz.com>; rebecca.hume@kobrekim.ky; pamella.mitchell@kobrekim.ky
**Subject:** In the matter of IIG Structured Trade Finance Fund Limited FSD 216 of 2019

Dear Mr. Hu,

We write further to our email dated 31 October 2019 by which we provided you with a copy of the winding up petition presented against IIG Structured Trade Fund Ltd (the "Company") on 30 October 2019, together with the affidavit evidence in support. We enclose a copy of the sealed affidavit of Oliver St. Thomas sworn on 4 November 2019 with exhibit marked "OS1", which deals with service of the petition and supporting evidence as well as the current position regarding attendance at the hearing of the winding up petition on 22 November, for your information.

We would be grateful if you could acknowledge safe receipt and confirm whether or not you and/or IIG  intends to attend the hearing this Friday 8 November at 9:30 a.m. and/or the hearing of the winding up petition on 22 November at 10:00 a.m. and, if so, whether you and/or IIG intend to oppose the making of a winding up order against the Company.

Regards,

WY-4/ 6

Nicole Farrington
Litigation Assistant
+1 345 749 4034

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

------------------------------------------------------------------------------------------------------------------------ NOTICE
This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system. Thank you.

WY-4/ 7

## ATTENDANCE NOTE

**To:**

**From:**     Rebecca Hume ("RH")

**Date:**     7 November 2019 at 11 a.m.

**Re:**       4640.001 - STFF

RH attended call with Joseph Perry of Baker Botts, who informed her his firm acts for Martin Silver of IIG. Mr. Perry called to advise that Mr. Silver does not intend to attend the hearing on 8 November and does not oppose the making of a winding up order against STFF.

Mr. Perry wanted to understand the nature of the hearing on 8 November. RH explained that it was a directions hearing i.e. a hearing to determine the steps that need to be taken before the hearing of the winding up petition. RH confirmed that this would include the court determining whether the proper parties to the winding up petition are the company and our client, which RH advised was the case because this was not a dispute between shareholders, as well as who the petition should be served on and whether it should be advertised.

Mr. Perry advised whilst his client had received the email with the winding up petition and supporting evidence attached, he had not accessed them and was now having difficulty doing so. RH advised that she would ensure new copies were sent to Mr Perry and explained that because they had been sent to Mr. Silver securely the link to them had probably expired. She apologized for any inconvenience. RH told Mr. Perry that if he had any further questions he should not hesitate to contact her.

Rebecca Hume

# KOBRE & KIM

10 Market Street 410
Camana Bay, Grand Cayman
Cayman Islands, KY1-9006
www.kobrekim.com
Tel +1 345 749 4000

25 November 2019

**BY HAND**

IIG Structured Trade Finance Fund Ltd
R/O Maples Corporate Services Limited
P.O. Box 309, Ugland House,
South Church Street, George Town
Grand Cayman, KY1-1104
Cayman Islands

RECEIVED

BY: _Rachel Nyman_
FOR: _Maples_
DATE: _22/11/19_
TIME: _2.16pm_

Our ref:    04640.001

Dear Sirs,

**Re:    In the Matter of IIG Structured Trade Finance Fund Limited FSD 216 of 2019 (NAS)**

We act on behalf of LAM Global Management Ltd I in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., ("LAM"), the petitioners in respect of the winding up petition presented against IIG Structured Trade Finance Fund Ltd (**"STFF"**). We enclose by way of service a sealed copy order dated 12 November 2019.

Kindly acknowledge safe receipt of this letter and its enclosure.

Yours faithfully

*Kobre & Kim (Cayman)*

KOBRE & KIM (CAYMAN)

Americas (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
Asia-Pacific (Hong Kong, Seoul, Shanghai), EMEA (London, Tel Aviv), Offshore (BVI, Cayman Islands)
Kobre & Kim referred to herein is a reference to Kobre & Kim (Cayman).

WY-4/ 9

| | |
|---|---|
| **From:** | Oliver Smith |
| **To:** | DHu@iigh.com; MSilver@iigh.com |
| **Cc:** | howard.schiffman@srz.com; Jason.Mitchell@srz.com; seth.taube@bakerbotts.com; joseph.perry@bakerbotts.com; Rebecca Hume |
| **Bcc:** | 04640.001 (LAM Global and Lime Asset Management Advice) |
| **Subject:** | In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| **Date:** | Monday, November 25, 2019 2:44:50 PM |
| **Attachments:** | 2019 11 12 Order (Sealed).pdf |

Dear Sirs,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write to you in your capacity as the board of directors of The International  Investment Group L.L.C.,  the investment manager of IIG Structured Trade Finance Fund Limited. We enclose a copy of the sealed order made on 12 November 2019 and would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect, which is that it had not been the registered owner of all of the Participating Shares in the company for a period of 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.
-
In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4000 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith

Oliver Smith
Analyst
+1 345 749 4029

## KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst

WY-4/ 10

+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

WY-4/ 11

| From: | Oliver Smith |
|---|---|
| To: | martin@pfscayman.com |
| Cc: | Rebecca Hume |
| Bcc: | 04640.001 (LAM Global and Lime Asset Management Advice) |
| Subject: | In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| Date: | Monday, November 25, 2019 2:51:34 PM |
| Attachments: | 2019 11 12 Order (Sealed).pdf |

Dear Mr. Laidlaw,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write further to our previous correspondence with you and enclose a copy of the sealed order made on 12 November 2019. We would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect which is that it had not been the registered owner of all of the Participating Shares in the company for 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.
-
In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4016 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith

Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)


This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

| | |
|---|---|
| **From:** | Oliver Smith |
| **To:** | andres@carral.org |
| **Cc:** | Rebecca Hume |
| **Bcc:** | 04640.001 (LAM Global and Lime Asset Management Advice) |
| **Subject:** | In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| **Date:** | Monday, November 25, 2019 2:55:49 PM |
| **Attachments:** | 2019 11 12 Order (Sealed).pdf |

Dear Mr. Carral,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write further to our previous correspondence with you and enclose a copy of the sealed order made on 12 November 2019. We would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect which is that it had not been the registered owner of all of the Participating Shares in the company for 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.
-
In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4016 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith


Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

| | |
|---|---|
| **From:** | Oliver Smith |
| **To:** | MSilver@iigh.com |
| **Cc:** | seth.taube@bakerbotts.com; joseph.perry@bakerbotts.com |
| **Subject:** | In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| **Date:** | Monday, November 25, 2019 2:58:29 PM |
| **Attachments:** | 2019 11 12 Order (Sealed).pdf |

Dear Mr. Silver,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write further to our previous correspondence with you and enclose a copy of the sealed order made on 12 November 2019. We would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect which is that it had not been the registered owner of all of the Participating Shares in the company for 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.
-
In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4016 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith

Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst
+1 345 749 4029

WY-4/ 16

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

| | |
|---|---|
| **From:** | Oliver Smith |
| **To:** | DHu@iigh.com |
| **Cc:** | howard.schiffman@srz.com; Jason.Mitchell@srz.com; Rebecca Hume |
| **Bcc:** | 04640.001 (LAM Global and Lime Asset Management Advice) |
| **Subject:** | In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| **Date:** | Monday, November 25, 2019 3:04:56 PM |
| **Attachments:** | 2019 11 12 Order (Sealed).pdf |

Dear Mr. Hu,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write further to our previous correspondence with you and enclose a copy of the sealed order made on 12 November 2019. We would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect which is that it had not been the registered owner of all of the Participating Shares in the company for 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.

In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4016 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith


Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst
+1 345 749 4029

# KOBRE & KIM

**www.kobrekim.com**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

| | |
|---|---|
| **From:** | Seth.Taube@BakerBotts.com |
| **To:** | Oliver Smith; MSilver@iigh.com |
| **Cc:** | joseph.perry@bakerbotts.com |
| **Subject:** | [EXTERNAL] RE: In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| **Date:** | Monday, November 25, 2019 3:07:14 PM |

Thanks. Maybe forward to the Directors

---

**From:** Oliver Smith <Oliver.Smith@kobrekim.com>
**Sent:** Monday, November 25, 2019 2:58 PM
**To:** MSilver@iigh.com
**Cc:** Taube, Seth T. <Seth.Taube@BakerBotts.com>; Perry, Joseph C. <joseph.perry@bakerbotts.com>
**Subject:** In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)

[EXTERNAL EMAIL]

Dear Mr. Silver,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write further to our previous correspondence with you and enclose a copy of the sealed order made on 12 November 2019. We would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect which is that it had not been the registered owner of all of the Participating Shares in the company for 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.

In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4016 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith

Oliver Smith
Analyst
+1 345 749 4029

**KOBRE & KIM**

[www.kobrekim.com](www.kobrekim.com)

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst
+1 345 749 4029

## KOBRE & KIM

[www.kobrekim.com](www.kobrekim.com)

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

**Confidentiality Notice:**

The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

| | |
|---|---|
| **From:** | Martin Laidlaw |
| **To:** | Oliver Smith |
| **Cc:** | Rebecca Hume |
| **Subject:** | [EXTERNAL] Re: In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS) |
| **Date:** | Monday, November 25, 2019 3:38:07 PM |

Dear Oliver

Thank you

Martin

Sent from my iPad

> On 25 Nov 2019, at 7:56 PM, Oliver Smith <Oliver.Smith@kobrekim.com> wrote:

Dear Mr. Laidlaw,

**In the matter of IIG Structured Trade Finance Fund Limited FSD No 216 of 2019 (NAS)**

We write further to our previous correspondence with you and enclose a copy of the sealed order made on 12 November 2019. We would be grateful if you could acknowledge safe receipt.

You will note from the order that the hearing of the winding up petition has been adjourned to the first available date after 1 December 2019. We understand from the court that it will be heard on 13 January 2020. This is because our client, LAM Global Management Ltd I, in its capacity as the general partner of LAM Enhanced Trade Finance Fund L.P., the petitioner, is required to re-present the winding up petition to cure a defect which is that it had not been the registered owner of all of the Participating Shares in the company for 6 months as at the date it presented the petition. In the circumstances our client intends to re-present the petition on Monday 2 December being the first business day after 1 December, at which point they will have been the registered holder of the shares for 6 months.
-
In the event that you have any questions please do not hesitate to contact myself or Rebecca Hume of this firm on +1 345 749 4016 or Rebecca.hume@kobrekim.com.

Yours sincerely,

Oliver Smith

Oliver Smith

Analyst
+1 345 749 4029

<KobreKim-EmailSignature_0f088e82-ccf7-4e2e-a7c8-48d10608edc9.jpg>

**[www.kobrekim.com](http://www.kobrekim.com)**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

Oliver Smith
Analyst
+1 345 749 4029

<KobreKim-EmailSignature_94ac2894-b17c-4117-8f82-13a30c35074b.jpg>

**[www.kobrekim.com](http://www.kobrekim.com)**

**Americas** (New York, Buenos Aires, Chicago, Miami, San Francisco, São Paulo, Washington DC)
**Asia-Pacific** (Hong Kong, Seoul, Shanghai), **EMEA** (London, Tel Aviv), **Offshore** (BVI, Cayman Islands)

This e-mail message is from Kobre & Kim (Cayman), a general partnership established under the laws of the Cayman Islands, referred to above as Kobre & Kim, and may contain legally privileged and/or confidential information. If the reader of this message is not the intended recipient(s), or the employee or agent responsible for delivering the message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete this e-mail message and any attachments from your computer without retaining a copy.

<2019 11 12 Order (Sealed).pdf>

## ATTENDANCE NOTE

**To:**

**From:**      Rebecca Hume ("RH")

**Date:**      25 November 2019 at 3.40 p.m.

**Re:**        4640.001 - STFF

RH attended call with Andrés Carral. Mr. Carral informed RH that he had received our email with the attached order. He informed RH that he resides in Mexico and that he is an honorary director who took the position as a favour to a friend. Mr Carral stated that he has never had any control over IIG Structured Trade Finance Fund Ltd. and that all decisions about the company were made by Mr Silver and Mr. Hu.

Mr Carral asked RH if she could advise him what to do. RH informed Mr. Carral that she was unable to advise him as her firm acts for LAM the petitioner.

Mr. Carral asked whether he needs to attend the hearing of the winding up petition. RH informed Mr. Carral that it depended on whether he wished to oppose the petition or not. RH explained that the winding up petition was against the company and not Mr. Carral and Mr. Laidlaw as its directors but that if Mr. Carral wished to oppose it then he should attend. Mr. Carral advised RH that he would usually speak with Mr. Laidlaw as he completely trusts him but that he is in Scotland as his mother is in a delicate situation.  RH informed Mr. Carral that he would be receiving the re-presented winding up petition in due course and recommended he email Mr. Laidlaw and they seek legal advice about whether or not they now wished to oppose the winding up petition.

Mr. Carral thanked RH for her time and the call ended.

Rebecca Hume

1 unit

**Marc P. Berger**
**Sanjay Wadhwa**
**Sheldon L. Pollock**
**Daniel Michael**
**Osman Nawaz**
**Lee A. Greenwood**
**Philip A. Fortino**
**Lindsay S. Moilanen**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-1014 (Fortino)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **19 Civ. ____** |
| **Plaintiff,** | |
| **v.** | **Complaint** |
| **INTERNATIONAL INVESTMENT GROUP, LLC,** | |
| **Defendant.** | |

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendant International Investment Group, LLC ("IIG" or "Defendant"), alleges as follows:

## **SUMMARY**

1.       This civil action concerns a string of frauds by Defendant to cover up tens of millions of dollars in losses on bad bets and keep its investment advisory business afloat.

2.       IIG is an investment adviser that specializes in trade finance lending—risky loans to small- and medium-sized companies in emerging markets.  IIG serves as the investment

Case 1:19-cv-10796-DLC Document 71 Filed 11/01/19 Page 7 of 14

adviser to several private investment funds—the Trade Opportunities Fund ("TOF"), the Global
Trade Finance Fund ("GTFF"), and the Structured Trade Finance Fund ("STFF") (collectively,
the "Private Funds")—and in that capacity, selects and manages the Private Funds' investments,
principally in trade finance loans.

3.     Beginning in or about 2007, IIG engaged in a practice of hiding losses in the TOF
portfolio by overvaluing troubled loans and replacing defaulted loans with fake "performing"
loan assets.  When it was necessary to create liquidity, including to meet redemption requests,
IIG would sell the overvalued and/or fictitious loans to new investors, including, ultimately, to
GTFF and STFF, and use the proceeds to generate the necessary liquidity required to pay off
earlier investors.

4.     In addition to the Private Funds, IIG also advised an open-end mutual fund
marketed to retail investors (the "Retail Fund") and selected trade finance loans for the Retail
Fund's portfolio.  In or about March 2017, one of the loans IIG had recommended had defaulted
on a $6 million payment.  Concerned that the default would lead the Retail Fund to end the
advisory relationship, IIG used funds from an account under its control to make the defaulted
payment, making it appear that the borrower was creditworthy and current in its payments.  To
plug the $6 million hole it had created in the other account, IIG sold the retail fund a new fake
$6 million loan and used those funds to reimburse the account it had raided to make the earlier
payment to the Retail Fund.

5.     Through the conduct alleged herein, IIG is liable for violating Sections 206(1) and
206(2) of the Investment Advisers Act of 1940 ("Advisers Act"); Section 10(b) of the Securities
Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; and Section 17(a) of the
Securities Act of 1933 ("Securities Act").

WY-4/ 26

Case 1:19-cv-10796-DLC   Document 77   Filed 11/01/19   Page 3 of 14

6.     The relief sought in this action, including an asset freeze, is necessary to, among other things, prevent further harm to Defendant's clients and to restrain and enjoin Defendant from violating the federal securities laws.

<u>**JURISDICTION AND VENUE**</u>

7.     The Commission brings this action pursuant to authority conferred by Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and seeks to restrain and permanently enjoin Defendant from engaging in the acts, practices, transactions, and courses of business alleged herein, and such other and further relief as the Court may deem just and appropriate.

8.     The Commission also seeks final judgments ordering Defendant to: (a) disgorge its ill-gotten gains, together with prejudgment interest thereon and (b) pay civil monetary penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

9.     The Commission also seeks preliminary and permanent injunctions: (a) enjoining Defendant from future violations of Sections 206(1) and 206(2) of the Advisers Act; Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and Section 17(a) of the Securities Act; (b) freezing IIG's assets; and (c) enjoining the filing or continuation of litigation affecting IIG's assets or assets controlled by IIG for the benefit of investment advisory clients.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Section 214(a) of the Advisers Act [15 U.S.C. § 80b-14(a)], Sections 20(b) and 22(a) of the Securities

Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

11.     Venue is proper in this District pursuant to Section 214(a) of the Advisers Act [15 U.S.C. § 80b-14(a)] because many of the acts and transactions constituting violations of the Advisers Act occurred within the Southern District of New York and because IIG inhabits the District.  Venue also is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because acts and transactions constituting violations alleged in this Complaint occurred within the Southern District of New York.

12.     In connection with the conduct alleged in this Complaint, Defendant, directly or indirectly, made use of the means or instrumentalities of transportation or communication in, and the means or instrumentalities of, interstate commerce.

## DEFENDANT

13.     IIG, a New Jersey limited liability company based in New York City, has been registered with the Commission as an investment adviser since 1995.  IIG serves as an investment adviser for multiple funds and separate accounts.  According to its Form ADV filed in March 2018, IIG had $373 million in assets under management.

## FACTS

### Background on the Private Funds and Trade Finance Loans

14.     Since its inception in 1994, IIG has specialized in advising clients with respect to investments in emerging market economies.  In or about 1998, it launched TOF.  IIG launched GTFF and STFF in June and July 2017, respectively.  All three Private Funds had the stated strategy of investing in trade finance loans.

WY-4/ 28

Case 1:19-cv-10796-DLC  Document 7  Filed 11/01/19  Page 5 of 14

15.     Trade finance loans are loans made to small- to medium-sized businesses, usually commodities exporters located in emerging markets, such as Latin America.  The loans are typically risky investments because the borrower's ability to repay could be impacted by less stable regulatory and economic conditions in the borrower's home country.  In order to mitigate the risk of these investments, trade finance loans typically are secured by collateral, which may include one or more of receivables, inventories, and assets.

16.     All three of the Private Funds were focused on and marketed to qualified institutional investors, including pension funds, insurers, and hedge funds, as a way for these prospective investors to diversify their portfolios with exposure to trade finance loans in Latin America.

17.     In offering memoranda and other communications, IIG touted its risk control strategies, which included portfolio concentration limits at the borrower, country, and commodity level.  It also touted its robust credit review process for borrowers.

18.     The Private Funds were valued on a regular basis including through a determination of the funds' net asset values ("NAV"), and IIG received compensation based on NAV and performance calculations.  With the exception of one position, every trade finance loan in the Private Fund portfolios was valued by IIG at par plus accrued interest throughout the entire life of the funds.

**IIG Hides Losses in TOF**

19.     Beginning in or about 2007, IIG engaged in various deceptive acts to misrepresent the performance of and conceal losses in TOF, including overvaluing portfolio assets and replacing non-performing assets with fictitious loans that were reported as if they were legitimate performing assets.

5

Case 1:19-cv-10796-DLC   Document 71   Filed 11/01/19   Page 6 of 14

20.     In or about 2007, when TOF's gross asset value was approximately $300 million, IIG learned that a $30 million loan by TOF to a South American coffee producer (the "Coffee Loan") had defaulted.

21.     Fearing that existing investors would flee the fund and that ongoing fundraising efforts would suffer if the loss were disclosed, IIG's two co-owners, Executive-1 and Executive-2, decided to conceal the loss and knowingly erroneously valued the loan at par plus accrued interest on the TOF's books.

22.     The overvaluation of the Coffee Loan materially inflated the NAV reported to TOF investors.

23.     When it became untenable to continue to carry the Coffee Loan on TOF's books as a performing asset due to auditor scrutiny, Executive-1 and Executive-2 removed the Coffee Loan from the firm's books and replaced it with fake loans to different borrowers (each, a "Substitute Loan"). The purported borrowers were foreign companies operating in other industries that were controlled by a business associate of IIG. Accordingly, the purported borrowers never received anything of value from TOF, and there was no expectation they ever would make any payments to TOF.

24.     Executive-1 and Executive-2 directed that documentation be created to evidence each Substitute Loan for audit purposes. In addition, starting in about 2010, Executive-1 and Executive-2 arranged for the purported borrowers to provide confirmations of the fake debts to auditors. In one case, Executive-2 arranged for TOF to pay a monthly fee to a purported borrower in exchange for receiving such false confirmations.

25.     In or about 2010, another sizeable TOF loan of approximately $30 million to a seafood producer (the "Seafood Loan") defaulted. As in the case of the loss on the Coffee Loan,

WY-4/ 30

Case 1:19-cv-10796-DLC   Document 71   Filed 11/01/19   Page 7 of 14

Executive-1 and Executive-2 agreed to hide the new loss by first continuing to value the Seafood Loan at par plus accrued interest and, when that became untenable, then removing the Seafood Loan from the portfolio and replacing it with additional Substitute Loans.

26.     Over time, as new losses arose or as the fictitious loans matured, IIG would remove them from the TOF portfolio and replace them with additional Substitute Loans.

27.     IIG's practices of overvaluing loans, including valuing the worthless Substitute Loans in the tens of millions of dollars, artificially inflated TOF's NAV and resulted in IIG receiving management and performance fees to which it was not entitled.

**IIG Defrauds New Investors to Keep TOF's Losses Under Wraps**

28.     In or about November 2013, TOF continued to have liquidity problems due to investor redemption requests, as well as repayment obligations on loans the fund had taken from international development banks.

29.     In order to help meet these liquidity needs, and to continue to conceal TOF's losses, Executive-2 spearheaded an effort to securitize the TOF loan portfolio.

30.      Ultimately, as a result of Executive-2's efforts, IIG obtained bank financing of approximately $220 million to capitalize a collateralized loan obligation trust (the "CLO").

31.     IIG, which served as the investment adviser to the CLO, then caused the CLO to use some of its capital to acquire existing trade finance loans from TOF.  The CLO retained additional capital to make new trade finance loans.

32.     Once it had acquired these assets from TOF, the CLO issued bonds to investors, backed by the cash flows the CLO received from the trust's assets.

33.     The proceeds to TOF from the sale of these loans to the CLO were not sufficient to meet TOF's liquidity needs.

WY-4/ 31

34.     Beginning in late 2014 and continuing through at least September 2016, in order to generate more liquidity, Executive-1 diverted some of the remaining cash from the CLO to TOF.

35.     To disguise the transactions, Executive-1 caused the CLO to make new loans to at least seven Panamanian shell companies (the "Panama Loans") secretly owned by IIG, but instead of directing the money to the supposed borrowers, Executive-1 directed that it be transferred to a TOF account and used to pay TOF's liabilities.

36.     Executive-1, with the assistance of a senior IIG employee ("Employee-1"), acquired the shell companies that were the nominal borrowers on the Panama Loans and by procuring fraudulent promissory notes memorializing the Panama Loans.

37.     The Panama Loans were worthless.  Nonetheless, IIG valued the fake assets in the tens of millions of dollars on the books of the CLO.

## IIG Offloads Fake and Troubled Loans to New Clients

38.     In or about 2017, TOF's liquidity needs persisted, and the notes issued by the CLO began to mature, without sufficient cash in the CLO from interest and principal payments to redeem all the noteholders.

39.     IIG explored various options to generate liquidity to meet the liabilities of TOF and the CLO, including raising a new fund to purchase assets from each.

40.     In or about 2017, IIG succeeded in generating interest in a new private fund, GTFF, on the part of a foreign investor ("Investor-1"), which agreed to invest $70 million as an anchor investor in the new fund.

41.     IIG used Investor-1's investment and subsequent smaller investments by two other foreign investors to purchase loan assets from TOF and the CLO for the GTFF portfolio.

WY-4/ 32

The assets purchased included approximately $44 million in fake Substitute Loans and Panama Loans.

42.     In addition, Executive-1 caused GTFF to purchase approximately $28 million in loans (the "Argentina Loans") to an Argentine borrower (the "Argentine Borrower") from the CLO.  At the time of the transaction, Executive-1 knew that the Argentina Loans were disputed, with the borrower claiming that the loans had been fully satisfied and IIG claiming the Argentine Borrower was in default.  Executive-1 and IIG failed to disclose the dispute concerning the Argentina Loans to GTFF and caused the fund to purchase the loans at par plus accrued interest, a price materially higher than the actual value of the assets in light of the claimed payoff and default.

43.     Later that same year, Investor-1 asked IIG to create another fund, STFF, to facilitate an additional $130 million investment.

44.     IIG still was in need of fresh capital to fully redeem the CLO noteholders and bailout TOF and agreed to establish STFF to facilitate Investor-1's additional investment.

45.     Executive-1 then caused STFF to acquire approximately $10 million in fake Substitute Loans and Panama Loans from TOF and the CLO.

46.     In addition, Executive-1 caused STFF to acquire $25 million in disputed Argentina Loans from the CLO.  As in the case of the GTFF transactions, Executive-1 and IIG caused STFF to pay full price for the Argentina Loans and did not inform STFF or Investor-1 that the loans were disputed.

47.     The sale of the fake loans and over-valued Argentina Loans to GTFF and STFF operated as a fraud on the funds and resulted in substantial damages to those clients.

WY-4/ 33

Case 1:19-cv-10796-DLC    Document    Filed 05/23/19    Page 10 of 14

### IIG Defrauds the Retail Fund

48.      In addition to serving as the investment adviser to the Private Funds, beginning in or about December 2012, IIG became an investment adviser to a portion of the assets of a retail mutual fund, the Retail Fund.

49.      In its capacity as an adviser to the Retail Fund, IIG recommended that it invest in participation interests in trade finance loans originated by IIG.  IIG was compensated for its recommendations with a percentage of the cash flows from the loans it recommended.

50.      Loans to the Argentine Borrower were among the loans the Retail Fund invested at IIG's recommendation.

51.      In or about February 2017, the Argentine Borrower was delinquent on a principal payment of approximately $6 million on a facility owned by the Retail Fund that was maturing.

52.      The Retail Fund informed IIG that it had an additional $6 million to invest and was interested in further lending to the Argentine Borrower, but only if the Argentine Borrower repaid the past-due loan in full.

53.      At the time, the Retail Fund was a crucial source of liquidity for IIG as a purchaser of participations in loans held by the Private Funds.  Executive-1 became concerned that a default on the Argentina Loan could result in the Retail Fund ending the relationship with IIG.

54.      On or about March 7, 2017, to make it appear as though the default on the Argentina Loan had been cured, Executive-1 instructed that approximately $6 million be transferred into a collection account of the Argentine Borrower from the collection account of a different borrower ("Borrower-1").  He further instructed that the funds be used to make the outstanding payment that the Argentine Borrower owed to the Retail Fund.

10

55.     That same day, Employee-1, acting on Executive-1's instructions, presented the Retail Fund with the opportunity to invest a fresh $6 million in a new loan recently made to the Argentine Borrower (the "New Argentina Loan").  Employee-1 furnished the Retail Fund with documentation purportedly memorializing the New Argentina Loan, including a notarized promissory note and credit agreement.

56.     The New Argentina Loan did not exist, and the documentation provided to the Retail Fund was forged.  Employee-1 prepared the forged documentation by altering documentation memorializing one of the earlier legitimate Argentina Loans, including electronically copying signature blocks from older documents.

57.     None of the $6 million invested by the Retail Fund was loaned to the Argentine Borrower.  Instead, Executive-1 directed that the proceeds be transferred to the account of Borrower-1 to reimburse that account for the earlier withdrawal.

58.     The purchase of the New Argentina Loan resulted in a $6 million loss to the Retail Fund.

### FIRST CLAIM FOR RELIEF

### Sections 206(1) and (2) of the Advisers Act

59.     The Commission realleges paragraphs 1 through 58, above.

60.     IIG, who had an adviser-client relationship with, and therefore owed a fiduciary duty to, the Private Funds and the Retail Fund, violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S. Code § 80b-6(1), (2)].

61.     From at least 2007 to the present, while acting as an investment adviser, Defendant, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, (a) employed a device, scheme, or artifice to defraud a client or prospective client;

11

and/or (b) engaged in transactions, practices, or courses of business that operated as a fraud or deceit upon a client or prospective client.

**SECOND CLAIM FOR RELIEF**

**Section 10(b) of the Exchange Act and Rules 10b-5(a), (b), and (c) Thereunder**

62.     The Commission realleges paragraphs 1 through 58, above.

63.     IIG violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

64.     From at least 2007 to the present, Defendant, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or the facility of a national securities exchange, in connection with the purchase or sale of securities, and with knowledge or recklessness, (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operates or would operate as a fraud or deceit upon any person.

**THIRD CLAIM FOR RELIEF**

**Sections 17(a)(1), (2), and (3) of the Securities Act**

65.     The Commission realleges paragraphs 1 through 58, above.

66.     IIG violated Section 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2), and (3)].

67.     From at least 2007 to the present, Defendant, directly or indirectly, by use of the means or instruments of interstate commerce, or of the mails, or the facility of a national securities exchange, in connection with the offer or sale of securities, and with knowledge,

WY-4/ 36

recklessness, or negligence, (a) employed devices, schemes, or artifices to defraud; (b) obtained

money or property by means of untrue statements of material fact or by omitting to state material

facts necessary to make the statements made, in light of the circumstances under which they

were made, not misleading; and/or (2) engaged in acts, practices, or courses of business which

operated or would operate as a fraud or deceit upon the purchasers of the securities being offered

or sold.

### PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court grant the

following relief:

### I.

An order preliminarily, through final judgment, restraining and enjoining Defendant from

directly or indirectly committing future violations of Sections 206(1) and 206(2) of the Advisers

Act,  Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17

C.F.R. § 240.10b-5], and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

### II.

An order preliminarily, through final judgment, freezing Defendant's assets;

### III.

An order preliminarily, through final judgement, enjoining the filing or continuation of

litigation that would affect the assets subject to the asset freeze order;

### IV.

A final judgment permanently restraining and enjoining Defendant from directly or

indirectly committing future violations of Section 206 of the Advisers Act [15 U.S.C. § 80b-6],

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.

§ 240.10b-5], and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

WY-4/ 37

## V.

A final judgment ordering Defendant to disgorge all ill-gotten gains or unjust enrichment,

plus prejudgment interest thereon;

## VI.

A final judgment ordering Defendant to pay civil monetary penalty pursuant to Section

209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

## VII.

Granting such other and further relief as the Court deems just, equitable, or necessary in

connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: New York, New York
         November 21, 2019


                              Respectfully submitted,


                              By:  /s/ Daniel Michael
                                   Marc P. Berger
                                   Sanjay Wadhwa
                                   Sheldon Pollock
                                   Daniel Michael
                                   Osman Nawaz
                                   Philip A. Fortino
                                   Lindsay S. Moilanen
                                   Attorneys for the Plaintiff
                                   SECURITIES AND EXCHANGE
                                     COMMISSION
                                   New York Regional Office
                                   200 Vesey Street, Suite 400
                                   New York, NY 10281-1022
                                   (212) 336-1014 (Fortino)

WY-4/ 38



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022

**DIVISION OF ENFORCEMENT**

Philip A. Fortino
(212) 336-1014
FortinoP@sec.gov

November 22, 2019

**Via ECF**

Hon. Denise L. Cote
United States District Judge
United States District Court for the
 Southern District of New York
500 Pearl Street, Room 1910
New York, NY 10007

Re:    **SEC v. International Investment Group, LLC, 19 Civ. 10796 (S.D.N.Y.)**

Dear Judge Cote:

        We represent plaintiff Securities and Exchange Commission (the "Commission") in the above-referenced action and write to respectfully request approval of the attached proposed partial consent judgment.  For the reasons described herein, the Court should approve the partial consent judgment as to defendant International Investment Group, LLC ("IIG") because it is fair and reasonable.  IIG joins in this request.[1]

**I.        Background**

        IIG is an investment adviser registered with the Commission that specializes in trade finance lending and serves as the investment adviser to three private funds (the "Private Funds") and a retail mutual fund.  The Commission's Complaint alleges that IIG engaged in a series of frauds, beginning in 2007, to cover up tens of millions of dollars in investment losses.  The scheme involved, among other things, over-valuing assets under management and the fraudulent sale of troubled and fake trade finance securities.  The Private Funds currently are the subject of ongoing insolvency proceedings in the courts of Curaçao and the Cayman Islands, where the funds were incorporated (the "Foreign Bankruptcy Proceedings").   In two of the three cases, liquidators have been appointed, and it is anticipated that a liquidator for the third fund will be appointed in the coming weeks.

---

[1]        IIG also has consented to a Commission order revoking its registration as an investment adviser upon the Court's entry of the proposed judgment.

Hon. Denise L. Cote
November 22, 2019
Page 2

The Commission and IIG have agreed to the attached partial consent judgment that, if approved, would permanently enjoin IIG from violating the relevant anti-fraud provisions of the federal securities laws and provide for the Commission's claims for monetary relief to be decided by motion at a later date. The proposed judgment would fully determine non-monetary relief sought and specifically would permanently enjoin IIG from violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act of 1933.

The proposed judgment also would impose a preliminary asset freeze on all assets belonging to or under the control of IIG, subject to enumerated carve-outs, and preclude third-party actions that would impact the assets subject to the freeze. These measures are necessary in order to preserve IIG's assets—which could be depleted through transfers or in the event of costly private litigation—to satisfy any disgorgement and civil penalties imposed by a final judgment in this action and, thereafter, be equitably distributed to affected investors through a court-approved plan. In addition, the measures would preserve the status quo with respect to any investor assets that remain under IIG's direct control while the liquidators appointed in the Foreign Bankruptcy Proceedings are assuming control of those assets. So as not to disrupt or frustrate the ongoing Foreign Bankruptcy Proceedings, the proposed judgment expressly does not stay the Foreign Bankruptcy Proceedings or asset transfers made on the liquidators' instructions.

## II.      Proposed Partial Consent Judgment is Fair and Reasonable

"[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable" and whether the "public interest would not be disserved." *SEC v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). A district court evaluating the fairness and reasonableness of an SEC consent judgment should assess at least four factors: (1) "the basic legality of the decree"; (2) "whether the terms of the decree, including its enforcement mechanism, are clear"; (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." *Id.* at 294-95 (citations omitted).

The judgment is fair and reasonable because it satisfies all four of these factors. *First*, the remedies that would be imposed by the proposed judgment are authorized by law. Congress has expressly authorized district courts to enjoin violations of the securities laws and to impose civil penalties in Commission enforcement actions like this one. *See* 15 U.S.C. §§ 77t(b), 78u(d), and 80b-9(d). When a showing of a securities law violation has been made, the Court also has broad equitable powers to grant relief ancillary to the relief expressly authorized by statute, including disgorgement and temporary asset freezes. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103, 1105-06 (1972) ("Clearly the provision requiring the disgorging of proceeds received in connection with the Manor offering was a proper exercise of the district court's equity powers …. One of the chief reasons for requiring defendants to refund illegally obtained proceeds of a

Hon. Denise L. Cote
November 22, 2019
Page 3

public offering is to compensate defrauded investors.  To effect this purpose, there may be circumstances where a district court should temporarily freeze defendants' assets to insure that they will be available to compensate public investors.").  The Court's equitable powers also include imposing a temporary litigation stay to avoid inequitable results if one harmed investor obtains assets in a separate proceeding that otherwise would have been available for equitable distribution to all affected investors.  *See, e.g.*, *SEC v. Byers*, 609 F.3d 87, 93 (2d Cir. 2010) (upholding litigation stay in aid of receivership); *SEC v. Credit Bancorp, Ltd.*, 93 F. Supp. 2d 475 (S.D.N.Y. 2000) (same; collecting cases).

 *Second*, the terms of the relief are clear, as the judgment spells them out.  The judgment makes clear that the Court would retain jurisdiction to enforce these terms.  *Third*, the judgment reflects a partial resolution of claims in the Complaint.  The relief afforded by the proposed judgment is specifically requested in the Commission's Complaint and is appropriate in light of the Commission's claims.  And, *fourth*, no improper collusion or corruption has tainted the judgment, as the parties have reached this partial resolution at arms' length.

 *Finally*, the public interest "would not be disserved" by the proposed judgment.  *Citigroup*, 752 F.3d at 294.  All of the relief requested serves the public interest by enjoining future violations of the securities laws, providing for the future recovery of monetary relief to benefit investors, and temporarily preserving the status quo with respect to assets belonging to and under the control of IIG.  The asset freeze and litigation stay both preserve IIG's assets to pay any disgorgement, pre-judgment interest, and/or civil penalties ordered by the Court in a final judgment, which amounts may subsequently be distributed to harmed investors.  The restraints also temporarily prevent IIG, which retains control over assets belonging to the Private Funds, from managing those assets until the Private Funds' court-appointed liquidators assume control over those assets.

 As noted, the proposed third-party restraints have been crafted in order to avoid interfering with the Foreign Bankruptcy Proceedings and the activities of the court-appointed liquidators in those proceedings.  The Foreign Bankruptcy Proceedings are exempt from the proposed anti-litigation injunction.  Moreover, the judgment would exempt from the asset-freeze transfers made upon the written instructions of the liquidators.  Thus, the proposed judgment should not impair the orderly wind-down of the Private Funds or the return to investors of assets of the Private Funds that may remain under IIG's control.

 There is at least one domestic state-court litigation that would be subject to the proposed litigation stay–*Girobank, N.V. v. IIG Trade Opportunities Fund, N.V. et al.*, Index No. 652135/2019 (N.Y. Sup. Ct.).  In that action, the plaintiff sought and obtained an attachment on certain assets of IIG; a motion to modify the attachment is pending.  The relief in the proposed judgment does not affect the state court attachment and is consistent with that earlier overlapping restraint.  The proposed judgment also would allow the plaintiff in the *Girobank* action—or any other private litigant—to petition for relief from the temporary restraints in the proposed judgment.

Case 1:19-cv-10796   Document 5   Filed 11/22/19   Page 4 of

Hon. Denise L. Cote
November 22, 2019
Page 4

        For all these reasons, the Commission respectfully requests that the Court approve the
proposed consent judgment.

                                        Respectfully submitted,

                                         /s/ Philip A. Fortino

                                        Philip A. Fortino
                                        Lindsay S. Moilanen
                                        Lee A. Greenwood

                                        Counsel for Plaintiff Securities and Exchange
                                        Commission

Enclosures

cc:     Terence Healy, Esq. (Counsel for Defendant) (by electronic mail)

WY-4/ 42

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

                  v.                                No. 19-cv-____ (___)

INTERNATIONAL INVESTMENT GROUP
LLC,

                              Defendant.

### CONSENT OF DEFENDANT INTERNATIONAL INVESTMENT GROUP LLC

1.      Defendant International Investment Group LLC ("Defendant") waives service of a summons and the complaint (the "Complaint") in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant hereby consents to the entry of the Judgment and Preliminary Asset Freeze Order in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things:

> (a)      permanently restrains and enjoins Defendant from violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5]; Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)]; and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80(b)-6(2)];

1

WY-4/ 43

     (b)     orders Defendant to pay disgorgement plus prejudgment interest thereon, and a civil penalty to be decided at a later time as ordered by the Court, either upon motion of the Commission or as resolved by the parties and submitted to the Court for approval; and

     (c)     freezes Defendant's assets pending a final disposition of this action, as described in the Judgment, except that any amounts allowed by the Court and any amounts for which Defendant receives written instruction from the directors of funds managed or advised by Defendant (the "Private Funds") and/or any fiduciary of the Private Funds, shall not be subject to the asset freeze, except that (1) any amounts allowed by the Court, upon application by Defendant, to pay legal expenses, upon Defendant's application (which the Commission retains the right to oppose), shall not be subject to the asset freeze;  and (2) any amounts held for the benefit of the Private Funds and for which Defendant receives written instructions from the duly appointed liquidator of such Private Fund shall not be subject to the asset freeze.

3.     Defendant agrees that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].  Defendant further agrees that the amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of the Commission, and that prejudgment interest shall be calculated from the dates of the violations, based on the rate of interest used by the Internal Revenue Service for the underpayment of

WY-4/ 44

Case 1:19-cv-10736-DLC    Document 67    Filed 10/22/19    Page 3 of 8

federal income tax as set forth in 26 U.S.C. § 6621(a)(2). Defendant further agrees that solely in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

4.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

6.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.    Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

8.    Defendant will not oppose the enforcement of the Judgment on the ground, if any, exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby

WY-4/ 45

waives any objection based thereon.

9.      Defendant waives service of the Judgment and agrees that entry of the Judgment
by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms
and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty
days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration
stating that Defendant has received and read a copy of the Judgment.

10.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims
asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or
representation has been made by the Commission or any member, officer, employee, agent, or
representative of the Commission with regard to any criminal liability that may have arisen or
may arise from the facts underlying this action or immunity from any such criminal liability.
Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding,
including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges
that the Court's entry of a permanent injunction may have collateral consequences under federal
or state law and the rules and regulations of self-regulatory organizations, licensing boards, and
other regulatory organizations.  Such collateral consequences include, but are not limited to, a
statutory disqualification with respect to membership or participation in, or association with a
member of, a self-regulatory organization.  This statutory disqualification has consequences that
are separate from any sanction imposed in an administrative proceeding.  In addition, in any
disciplinary proceeding before the Commission based on the entry of the injunction in this
action, Defendant understands that it shall not be permitted to contest the factual allegations of
the complaint in this action.

11.     Defendant understands and agrees to comply with the terms of 17 C.F.R.

4

§ 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e),  Defendant: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; and (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a

WY-4/ 47

party, Defendant (i) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents; (ii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iii) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules; and (iv) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

14.    Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be instituted when the Judgment is entered.

15.    Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

16.    Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Approved as to form:

Terence Healy, Esq.
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, D.C.  20006
Attorney for Defendant

6

WY-4/ 48

Dated: November 14, 2019

_____
International Investment Group LLC

By: _____
David Hu, Partner
International Investment Group LLC
New York, NY 10016


On November 14, 2019, David Hu, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.


_____
Notary Public
Commission expires: 01|18|2022

JOSEPH D SPINALLI
Notary Public – State of New Jersey
My Commission Expires Jan 18, 2022

7

Dated: November 14 , 2019

International Investment Group LLC

By:

Martin Silver, Partner
International Investment Group LLC
New York, NY 10016

    On November 14 , 2019, Martin Silver, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

Notary Public
Commission expires:

STEVEN MICHAEL LIQUORI
NOTARY PUBLIC, State of New York
No. 01LI6060731
Qualified in Nassau County
Commission Expires July 2, 20 23

WY-4/ 50

Case 1:19-cv-10796-DLC Document 34 Filed 11/26/19 Page 1 of 7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                    **Plaintiff,**

    v.

INTERNATIONAL INVESTMENT GROUP
LLC,

                    **Defendant.**

**No. 19-cv-10796 (DLC)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 11 26 2019
```

## JUDGMENT AND PRELIMINARY ASSET FREEZE ORDER
## AS TO DEFENDANT INTERNATIONAL INVESTMENT GROUP LLC

The Securities and Exchange Commission having filed a Complaint and Defendant

International Investment Group LLC ("Defendant") having entered a general appearance;

consented to the Court's jurisdiction over Defendant and the subject matter of this action;

consented to entry of this Judgment and Preliminary Asset Freeze Order (the "Judgment");

waived findings of fact and conclusions of law; and waived any right to appeal from this

Judgment:

### I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant is

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

1

WY-4/ 51

interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

## II.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements

WY-4/ 52

made, in light of the circumstances under which they were made, not misleading; or

(c)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

### III.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant is permanently restrained and enjoined from violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80(b)-6(1) and 80(b)-6(2)], by, while acting as an investment adviser, using any means or instrumentalities of interstate commerce, or any means or instruments of transportation or communication in interstate commerce, or by the mails or any facility of any national securities exchange:

(a)     to employ any device, scheme, or artifice to defraud any client or prospective client;

(b)     to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; or

(c)     to engage in any acts, practices, or courses of business which are fraudulent, deceptive, or manipulative.

3

WY-4/ 53

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in
Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who
receive actual notice of this Judgment by personal service or otherwise:  (a) Defendant's officers,
agents, servants, employees, and attorneys; and (b) other persons in active concert or
participation with Defendant or with anyone described in (a).

## IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that
Defendant shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil
penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of
the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C.
§ 80b-9(e)].  The Court shall determine the amounts of the disgorgement and civil penalty upon
motion of the Commission.  Prejudgment interest shall be calculated from the dates of the
violations, based on the rate of interest used by the Internal Revenue Service for the
underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).  In connection with
the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on
such a motion: (a) Defendant will be precluded from arguing that it did not violate the federal
securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the
Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the
Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine
the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn
deposition or investigative testimony, and documentary evidence, without regard to the standards
for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In
connection with the Commission's motion for disgorgement and/or civil penalties, the parties

WY-4/ 54

may take discovery, including discovery from appropriate non-parties.

## V.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that,

pending a final disposition of this action, Defendant and each of its officers, agents, servants,

employees and attorneys and those persons in active concert or participation with them who

receive actual notice of this Judgment by personal service or otherwise, including facsimile

transmission, electronic mail, or overnight delivery service, shall hold and retain funds and other

assets of Defendant presently held by it, for its direct or indirect benefit, under its direct or

indirect control or over which it exercises actual or apparent investment or other authority, in

whatever form such assets may presently exist and wherever located, and shall prevent any

withdrawal, sale, payment (including, but not limited to, any charges on any credit card or draws

on any other credit arrangement), transfer, dissipation, assignment, pledge, alienation,

encumbrance, disposal, or diminution in value of any such funds or other assets, which are

hereby frozen, including, without limitation, such funds held in the accounts listed on Exhibit A,

except that (1) any amounts (including, without limitation, amounts advanced by Defendant's

insurers) allowed by the Court to pay legal expenses, upon application of Defendant or

application of any party claiming right to coverage under Defendant's insurance (which

applications the Commission retains the right to oppose), shall not be subject to the asset freeze;

and (2) any amounts held for the benefit of any of the private investment funds managed by

Defendant (the "Private Funds") and for which Defendant receives written instructions from the

duly appointed liquidator of such Private Fund shall not be subject to the asset freeze.

WY-4/ 55

## VI.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that,

pending final disposition of this action, all banks, brokerage and other financial institutions and

other persons or entities which receive actual notice of this Judgment by personal service or

otherwise, including facsimile transmissions, electronic mail, or overnight delivery service,

holding any funds or other assets in the name, for the direct or indirect benefit, or under the

direct or indirect control of Defendant or over which they exercise actual or apparent investment

or other authority, in whatever form such assets may presently exist and wherever located, shall

hold and retain within their control and prohibit the withdrawal, removal, sale, payment

(including, but not limited to, any charges on any credit card or draws on any other credit

arrangement), transfer, dissipation, assignment, pledge, alienation, encumbrance, diminution in

value, or other disposal of any such funds or other assets; and that such funds and assets are

hereby frozen, including, without limitation, such funds held in the accounts listed on Exhibit A,

except that (1) any amounts (including, without limitation, amounts advanced by Defendant's

insurers) allowed by the Court to pay legal expenses, upon application of Defendant or

application of any party claiming right to coverage under Defendant's insurance (which

applications the Commission retains the right to oppose), shall not be subject to the asset freeze;

and (2) any amounts held for the benefit of the Private Funds and for which Defendant receives

written instructions from the duly appointed liquidator of such Private Fund shall not be subject

to the asset freeze.

WY-4/ 56

## VII.

**IT IS FURTHER ORDERED** that no person or entity, including any creditor of or claimant against Defendant with actual notice of this Judgment (with the exception of any fiduciary appointed by a domestic or foreign court of competent jurisdiction), or any person acting on behalf of such creditor or claimant, shall take any action to interfere with funds or other assets in the name, for the direct or indirect benefit, or under the direct or indirect control of Defendant, including, but not limited to, the filing or continuation of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact such funds or other assets. Any pending bankruptcy petition as to any of the Private Funds is excluded from the foregoing prohibitions. Any person or entity may petition the Court for relief from this paragraph upon three business days' notice to the Commission.

## VIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

## VIII.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

Dated: November 26, 2019

_____
UNITED STATES DISTRICT JUDGE

7

WY-4/ 57

서울 영등포구 여의나루로 67
(여의도동. 신송빌딩) 1401호
[별지 제12호서식]

# 서울중앙 공증인 합동사무소

(전화) 02-3178-8200
(팩스) 02-3178-5544

등부 2019 년   제 2661호

Registered No. 2019-2661

## 인   증

# NOTARIAL CERTIFICATE

위 진술서 - - - - - - - - - - - - - - - - -

에 기재된 윤원주 - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - -

은 본 공증인의 면전에서 위 사서증서에

자기가 서명 -   한 것임을 자인하였다.

Won Joo Yoon - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - -

personally appeared before me and

admitted his(her) subscription to the

attached   AFFIDAVIT - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - -

2019년 11월 29일
  이 사무소에서 위 인증한다.

This is hereby attested on this
29th day of Nov. 2019 at this office.

## 서울중앙 공증인 합동사무소

서울남부지방검찰청 소 속

서울 영등포구 여의나루로 67
(여의도동. 신송빌딩) 1401호

**NOTARY PUBLIC OFFICE
SEOUL-JOONGANG**

Seoul Southern
**District Prosecutor's Office**

floor 14 Sinsong Bldg

**67, yeouinaru-ro, yeongdeungpo-gu, Seoul, Korea**

공증인   정 성 광



Signature of the Notary Public

**Sung Kwang Chung**

본 사무소는 인가번호 제158호에 의거하여
2014년 01월 20일 법무부 장관으로부터
공증인 업무를 행할 것을 인가 받았다.

This office has been authorized by the
Minister of Justice. the Republic of
Korea, to act as Notary Public Since
20. Jan. 2014 Under Law No.158.

210mm X 297mm