MORRISON & FOERSTER LLP
250 W 55th St.
New York, NY 10019
Telephone: 212-468-8000
Facsimile: 212-468-7900
John A. Pintarelli
Erica J. Richards

*Attorneys for Petitioners, Christopher Kennedy and Alexander Lawson, in their capacities as Joint Official Liquidators of IIG Structured Trade Finance Fund Ltd. (in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : Chapter 15 |
| | : |
| IIG Structured Trade Finance Fund Ltd.,[1] | : Case No. 20-11129 (___) |
| | : |
| Debtor in a Foreign Proceeding. | : |

**DECLARATION OF RUPERT BELL
IN SUPPORT OF CHAPTER 15 PETITION FOR
RECOGNITION AS FOREIGN MAIN PROCEEDING**

I, Rupert Bell, do hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**I.    INTRODUCTION**

1.    I am a partner at Walkers in the Cayman Islands and Cayman Islands legal counsel to Christopher Kennedy and Alexander Lawson (the "**Liquidators**" or "**Petitioners**"), who, on January 31, 2020, were appointed by the Grand Court of the Cayman Islands (the

---

[1] The last four digits of the Debtor's company number is (3564). The registered office of the Debtor is c/o Alvarez and Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 2nd Floor, 70 Harbour Drive, George Town, Grand Cayman, KY1-1104, Cayman Islands.

ny-1871674

"**Grand Court**") as the Joint Official Liquidators of IIG Structured Trade Finance Fund Ltd. (in Official Liquidation) ("**STFF**").

2.     Walkers is one of the largest offshore law firms in the world, with offices in the Cayman Islands, the British Virgin Islands, Bermuda, London, Jersey, Guernsey, Dubai, Hong Kong, Singapore and Dublin.  Walkers provides legal services to leading Fortune 100 and FTSE 100 global corporations and financial institutions, capital markets participants, investment fund managers and growth and middle-market companies.  In the Cayman Islands, Walkers is one of the two largest firms, having been established in 1964.

3.     I was admitted as an attorney in Queensland, Australia, in 2004 and practiced as an associate at the firm of Clayton Utz in Australia until joining the firm of Walkers in March 2008 as an associate.  I became a partner of Walkers in July 2015.  The focus of my practice is commercial litigation, and cross-border restructuring and insolvency.  As a result of my experience I am familiar with the statutory framework and common law principles applicable to the winding up of entities registered in the Cayman Islands.

4.     Although I am not a U.S. attorney and therefore do not purport to make any authoritative statements concerning matters of U.S. law, I am well acquainted with Chapter 15 ("**Chapter 15**") of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), due to my experience advising clients on cross-border corporate restructurings and insolvencies.

5.     I submit this declaration in support of the petition dated May 8, 2020 seeking the U.S. Bankruptcy Court's recognition of (a) the liquidation of STFF as a "foreign main proceeding" pursuant to 11 U.S.C. § 1517(b)(1) and (b) the Petitioners as "foreign representatives" of STFF pursuant to 11 U.S.C. § 101(24) (the "**Chapter 15 Petition**").

2

ny-1871674

6. I am competent to testify and, except as otherwise indicated, all facts set forth in this declaration are based upon my personal experience and knowledge and my review of relevant documents, which include the sworn declarations of Christopher Kennedy dated May 8, 2020 (the "**Kennedy Declaration**") and John A. Pintarelli dated May 8, 2020 (the "**Pintarelli Declaration**"). To the extent that statements in this declaration are of my own legal opinion, they represent my views and understanding of the laws of the Cayman Islands as a practicing Cayman Islands attorney.

7. I have been asked by the Petitioners to explain the substantive Cayman Islands law and procedural rules relevant to the liquidation and dissolution of Cayman Islands companies and, more particularly, STFF.

## II.    BACKGROUND

8. On June 7, 2017, STFF was incorporated as an exempted limited liability company under the laws of the Cayman Islands. I refer to an extract from the Cayman Online Registry Information Service dated April 22, 2020 confirming the same, a true and correct copy of which is attached as **Exhibit A.**

9. According to my review of the documents referenced below: (a) STFF was formed and operates pursuant to a Memorandum and Articles of Association, dated June 7, 2017 (the "**Articles**") and filed with the Cayman Islands Registrar of Companies; (b) the directors of STFF were Andrés Carral Cuevas and Martin Laidlaw; (c) Maples Fund Services (Cayman) Limited ("**Maples FS Limited**") was appointed as the administrator of STFF; (d) prior to its entry into official liquidation, STFF's registered address was Maples Corporate Services

Limited, PO Box 309, Ugland House, Georgetown, KY1-1104, Cayman Islands;[2] (e) STFF entered into an investment advisory agreement dated June 26, 2017 (the "**Investment Advisory Agreement**") with The International Investment Group L.L.C. ("**IIG**") pursuant to which IIG was appointed as STFF's investment advisor. IIG is a New Jersey based investment advisory company headquartered in New York, New York. IIG's founders and principals are David Hu and Martin Silver; (f) under the terms of its Confidential Private Offering Memorandum dated June 2017 (the "**Offering Memorandum**"), STFF carried on business as an investment fund pursuant to which it offered participating shares ("**Shares**") to prospective investors via subscription agreements and its investment objective was to provide consistent returns through a professionally managed portfolio investing primarily in trade finance-related loans and other financing transactions (the "**Investment Facilities**") that predominantly involved obligors based in emerging market countries, with a focus on Latin America, located in Argentina, Uruguay, Ecuador, Panama, Nicaragua, Guatemala, Colombia, Brazil and Peru; and (g) pursuant to a July 2018 supplement to the Offering Memorandum (the "**July 2018 Supplement**"), STFF identified an additional investment objective, which was to enter into a credit line, term loan or other financing facility or transaction, however structured, with its affiliates and/or affiliates of IIG, provided that such transactions are on an arm's-length basis.

10.   On February 19, 2020, this Court recognized the Cayman Islands liquidation of IIG Global Trade Finance Fund Ltd. (in Official Liquidation) ("**GTFF**"), an affiliate of STFF, as a foreign main proceeding (*In re IIG Global Trade Finance Fund Ltd. (in Official Liquidation)*, Case No. 20-10132 (MEW) [ECF No. 9]), in respect of which the Liquidators are appointed as

---

[2]   Upon its entry into official liquidation its address was changed to c/o Alvarez and Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 2nd Floor, 70 Harbour Drive, George Town, Cayman Islands, KY1-1104. Kennedy Declaration ¶ 9

joint official liquidators by Order of the Grand Court dated 23 October 2019 (the "**GTFF Liquidators**").

### III.    ENTRY BY STFF INTO LIQUIDATION

11.    On December 4, 2019, STFF's sole contributory (the "**Petitioning Contributory**") presented a contributory's petition seeking the winding up of STFF on just and equitable grounds and the appointment of the Liquidators as joint official liquidators of STFF pursuant to Section 94 of the Companies Law (the "**Cayman Petition**").  Kennedy Declaration ¶ 19.  (A copy of the Cayman Petition is attached to the Kennedy Declaration as Exhibit E.)  The Cayman Petition alleged that STFF had lost its sub-stratum (*i.e.*, it is no longer pursuing the business for which STFF was formed) because from at least December 2018, STFF had ceased to carry out any investment business in accordance with the fund objectives set out in the set out in STFF's Offering Memorandum (as amended by the July 2018 Supplement), that investment activity may have ceased from April 2018, when the last NAV statements were produced for STFF, and that STFF was therefore liable to be wound up on the 'just and equitable' basis, pursuant to section 92(e) of the Companies Law (2018 Revision) (the "**Companies Law**"). Kennedy Declaration ¶ 19.

12.    I have reviewed the First Affidavit of Nicole Marie Farrington dated 6 December 2019, which confirms that notice of the presentation of the Cayman Petition and its request for appointment of the Liquidators was provided by serving a copy of the Cayman Petition on the Company at its registered office in accordance with the Companies Winding Up Rules, 2018 ("**CWR**").  I have also reviewed an order of the Grand Court dated 3 January 2020, a copy of which is attached to the Kennedy Declaration as Exhibit F, pursuant to which the requirement for advertisement of the Cayman Petition pursuant to the CWR was dispensed with.

ny-1871674

13. The Cayman Petition sought, among other things, the following relief: (a) the winding up of STFF to commence under the supervision of the Grand Court in accordance with the Companies Law; (b) the appointment of Mr. Lawson and Mr. Kennedy in their capacities as Liquidators of STFF; and (c) the granting of certain powers to Mr. Lawson and Mr. Kennedy in their capacities as the Liquidators of STFF, as described in the Cayman Petition.

14. On January 31, 2020, the Grand Court made the Liquidation Order. A true and correct copy of the Liquidation Order is attached to the Kennedy Declaration as Exhibit A.

15. As a consequence of the foregoing, the Liquidators have, since January 31, 2020, been empowered by the Grand Court to exercise the powers and functions set forth in the Liquidation Order, and have been statutorily empowered to exercise certain other powers including those contained in section 103 of the Companies Law in respect of STFF. True and correct copies of the relevant sections of the Companies Law are attached hereto as **Exhibit B**.

## IV. SOURCES OF LAW OF THE CAYMAN ISLANDS

16. The Cayman Islands is a British Overseas Territory, and as such, the laws of the Cayman Islands are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law brought to the Cayman Islands by the early settlers, as adapted to local circumstances and subsequently developed and applied by the courts of the Cayman Islands (the "**Cayman Courts**"); (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

17. Where no specific local statutory provision applies, the Cayman Courts will generally apply English common law as adapted to the circumstances of the Cayman Islands.  On questions governed by the common law, the doctrine of judicial precedent applies.  The court of first instance is the Grand Court which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong: *Re Bank of Credit & Commerce International (Overseas) Limited* [1994-95] CILR 56, at page 59.  A copy of the judgment in this case is attached hereto as **Exhibit C**.  There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal.  The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "**Privy Council**") which sits in London and which is comprised of members of the English Supreme Court (the highest court in England, formerly known as the Judicial Committee of the House of Lords) and senior judges from other Commonwealth countries.  The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

18. There is an increasing body of jurisprudence in the Cayman Islands developed mainly over the last 40 years and reported in the Cayman Islands Law Reports.  Notwithstanding that, it still regularly transpires that there is no local Cayman Islands authority on a particular issue.  Where there is no Cayman Islands authority on a particular issue, the Cayman Courts will look to and apply decisions of the English courts and, less frequently, decisions of the courts of other Commonwealth jurisdictions.  Decisions of the English Court of Appeal and Supreme Court are regarded as highly persuasive.  So too are decisions of the Privy Council on appeals originating from other Overseas Territories and Commonwealth jurisdictions, and decisions of the highest courts of the other developed Commonwealth jurisdictions such as Australia, New

Zealand, Canada, and Hong Kong might have persuasive effect on the decisions of the Grand Court, depending on their subject matter.

## V. LIQUIDATION OF CAYMAN ISLANDS COMPANIES

19. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the CWR, the Insolvency Practitioners' Regulations 2018 (the "**IPR**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018, and the Grand Court Rules 1995 (as revised) (the "**GCR**"). The provisions of Part V of the Companies Law apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies.

20. A Cayman Islands company may be wound up: (a) compulsorily, by order of the Grand Court;[3] (b) voluntarily, following the passing of a special resolution of its shareholder(s),[4] because the period fixed for the duration of the company in its articles of association has expired[5] or pursuant to the occurrence of an event contained in the company's articles of association;[6] or (c) under the supervision of the Grand Court.[7]

## VI. LIQUIDATION BY THE GRAND COURT

21. The official liquidation of a Cayman Islands company is carried out by individuals known as official liquidators whose actions are subject to the oversight and supervision of the Grand Court, pursuant to certain statutory mechanisms set out in the Companies Law, the CWR and the IPR. A company may be wound up by the Grand Court

---

[3] Section 90(a) of the Companies Law.
[4] Section 90(b)(i) of the Companies Law.
[5] Section 90(b)(ii) of the Companies Law.
[6] Section 90(b)(iii) of the Companies Law.
[7] Section 90(c) of the Companies Law.

ny-1871674

where (a) the company has passed a special resolution requiring the company to be wound up by the Court, (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year, (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever an event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up, (d) the company is unable to pay its debts, or (e) the court is of the opinion that it is just and equitable that the company be wound up.[8]

22. A general principle underlying the Cayman Islands' insolvency regime is that creditors are treated on a *pari passu* basis, subject to certain exceptions.[9]

23. Section 97(1) of the Companies Law provides in relevant part that upon the entry of a winding up order against a company, no suit, action, or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay serves to, *inter alia*, facilitate the Liquidators' ability to deal with the claims of creditors collectively and comprehensively.

24. In my experience, Cayman Islands liquidation proceedings are fair and equitable, insofar as that all creditors and interest holders have the opportunity to be heard by the Grand Court and no creditors will be prejudiced on the sole basis that they are foreign-based.

## VII.    THE LIQUIDATORS

25. The Liquidators are fiduciaries and officers of the Grand Court. As official liquidators of STFF, their function is to (a) collect, realise and distribute the assets of STFF to its creditors and if there is a surplus, to equity holders in accordance with their rights, and (b) report

---

[8] Section 92 of the Companies Law.
[9] For example, see sections 140 and 141 of the Companies Law.

to STFF's creditors and shareholders upon the affairs of STFF and the manner in which they are being wound up.[10]

26. Schedule 3, Part I of the Companies Law sets out the following powers that the Liquidators may exercise with the sanction of the Grand Court:

    a. "Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

    b. Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

    c. Power to dispose of any property of the company to a person who is or was related to the company.

    d. Power to pay any class of creditors in full.

    e. Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

    f Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

    g. Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

    h. The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

    i. The power to raise or borrow money and grant securities therefor over the property of the company.

---

[10] Section 110 of the Companies Law.

  j. The power to engage staff (whether or not as employees of the company) to assist [them] in the performance of [their] functions.

  k. The power to engage attorneys and other professionally qualified persons to assist [them] in the performance of [their] functions."

27. Schedule 3, Part II of the Companies Law further provides that the Liquidators are permitted to exercise the following powers without the Grand Court's sanction:

  a. "The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as [they] consider necessary.

  b. The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

  c. The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against [their] estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

  d. The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

  e. The power to promote a scheme of arrangement pursuant to section 86.

  f. The power to convene meetings of creditors and contributories.

  g. The power to do all other things incidental to the exercise of [their] powers."

28. The Liquidators are also empowered to investigate (a) the causes for the failure of STFF, as well as (b) generally, the promotion, business, dealings and affairs of STFF.[11]

29. STFF was established as a Cayman Islands exempted limited liability company. Under the Companies Law an exempted company "shall not carry on a trade or business in the

---

[11] Section 102 of the Companies Law.

ny-1871674

[Cayman] Islands with any person, except in furtherance of [its business] carried on outside of the [Cayman Islands], unless that exempted company holds a licence to carry on business in the [Cayman] Islands under any applicable law."[12] Upon application to register as an exempted company with the Cayman Islands Registrar of Companies, the objects of the company are required to be "...conducted mainly outside the [Cayman] Islands."[13] Further, upon filing an annual return with the Cayman Islands Registrar of Companies, an exempted company is also required to declare its operations "since the last return or since registration […] have been mainly outside the [Cayman] Islands."[14] However, in order to further its objects outside of the Cayman Islands, an exempted company may "[effect and conclude] contracts in the [Cayman] Islands and [exercise] in the [Cayman] Islands all its powers necessary for the carrying on of its business outside the [Cayman] Islands."[15] In other words, it can employ staff or agents in the Cayman Islands and maintain offices in the Cayman Islands.

30.     Although, upon its incorporation, STFF as an exempted company was required to conduct its operations mainly outside the Cayman Islands, that did not mean that STFF had no presence at all in this jurisdiction. For example, as pointed out previously, the registered office of STFF has been situated in the Cayman Islands since its inception and continues to be so situated, namely, initially at Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands, from where the STFF's annual filings with the Registrar of Companies were made, and now at c/o Alvarez and Marsal Cayman Islands Limited, Flagship Building, PO Box 2507, 2nd Floor, 70 Harbour Drive, George Town, Grand Cayman KY1-1104, Cayman Islands. Under private international law, shares are deemed to be situated in

---

[12] Section 174(1) of the Companies Law
[13] Sections 163 and 165 of the Companies Law
[14] Sections 168(b) of the Companies Law
[15] Section 174(2) of the Companies Law

the country where they can be effectively dealt with between the shareholder and that company. *See 160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. A copy of the judgment in this case is attached hereto as **Exhibit D**. I would expect that any issues relating to the title of those shares will be governed by the laws of the Cayman Islands. In addition, one of STFF's directors is domiciled and resident in the Cayman Islands.

31.     The status of a company as "exempted" does not operate to prevent the liquidation of that company from being controlled and supervised from within the Cayman Islands. In addition, it is a requirement of Cayman Islands law that at least one official liquidator be resident in the Cayman Islands. In this case, both Liquidators are residents of the Cayman Islands, as permitted by the IPR.

*[Signature page follows]*

Pursuant to Section 1746 of Title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 8, 2020
      Grand Cayman, Cayman Islands

/s/ Rupert Bell
Rupert Bell

*Attorney for Petitioners, Christopher Kennedy and Alexander Lawson, in their capacities as Joint Official Liquidators of IIG Structured Trade Finance Fund Ltd. (in Official Liquidation)*